Rammie Earl HALL *v.* STATE of Arkansas

CR 95-166                                   933 S.W.2d 363

Supreme Court of Arkansas
Opinion delivered October 21, 1996
[Petition for rehearing denied December 9, 1996.]

*Appellant,* pro se.

*Winston Bryant,* Att'y Gen., by: *Clint Miller,* Deputy Att'y Gen., Sr. Appellate Advocate for appellee.

TOM GLAZE, Justice. Appellant Rammie Hall was convicted of the capital murder of George DeClerk and sentenced to life without parole. Hall appealed, raising nine points for reversal, and this court found no merit to his arguments and affirmed. *Hall v. State*, 315 Ark. 385, 868 S.W.2d 453 (1993) (*Hall I*). Within sixty days after this court's mandate was issued, Hall filed a post-conviction petition in Randolph County Circuit Court, alleging his counsel had been ineffective at his trial. The trial court denied Hall's petition, and Hall now raises seven arguments why the trial court should be reversed.

To prevail on any claim of ineffective assistance of counsel, the petitioner must first show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Thomas v. State*, 322 Ark. 670, 911 S.W.2d 259 (1995). Second, the petitioner must show that the deficient performance prejudiced the defense as to deprive the petitioner of a fair trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.*

Further, when reviewing ineffective-counsel claims, a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

We now address Hall's first point that his counsel was ineffective because he failed to compel the State to elect between charging Hall with either premeditated and deliberated capital murder or capital felony murder. The State's amended information charged Hall with one count of capital murder, but alleged both premeditated and deliberated murder "and" capital felony murder while committing robbery and burglary. He claims the amended information changed the nature and degree of the offense, and he was prejudiced by the "duplicitous, overbroad and vague charging instrument." He also claims the charges prevented the separation of evidentiary objections and rulings during trial, but we dispose of this argument summarily because he fails to point to any incidence

at trial where he was denied making an objection or was unable to obtain a ruling.

As to his contentions that the State's amended information increased the nature and degree of his offense, we point out that this court answered this argument in *Rucker v. State*, 320 Ark. 643, 899 S.W.2d 447 (1995). There, Rucker challenged a pretrial amendment of an information that charged Rucker with capital murder on the basis of felony murder and added, as an alternative, the charge of capital murder based upon premeditated and deliberated purpose. This court held that the amended information adding premeditated and deliberated capital murder did not change the nature or degree of the crime charged. *See also Nance v. State*, 323 Ark. 583, 918 S.W.2d 114 (1996). In view of our holding in *Rucker*, Hall simply fails to show how the outcome of his trial would have been different had the prosecutor been forced to elect between the capital murder crimes. We also note that, in arguing he was denied a fair trial, Hall never points to the evidence he was prevented from presenting, or shows how he was prejudiced because he had been charged with one count of capital murder, albeit with two types.

In his second point, Hall contends that the State's fourth amended information charging him with capital murder was invalid and should have been quashed because a deputy prosecutor had previously signed the first amended information in the name of the prosecutor, but without the prosecutor's consent. Hall argues Amendment 21 to the Arkansas Constitution only allows a deputy prosecutor to file informations if the prosecutor gave his consent and authorization to do so. As a consequence, Hall claims the trial court had no subject-matter jurisdiction. In *Bingley v. State*, 235 Ark. 982, 363 S.W.2d 530 (1963), the court considered a similar argument. There, Bingley argued Amendment 21 required the information to be signed by the prosecutor, but this court opined the deputy attorney could sign the information in the name of the prosecuting attorney and still be in compliance with the Constitution, as long as the deputy indicates by whom the prosecutor's name is being signed on the information. While Hall argues that a letter signed by the deputy inferred the prosecutor had no knowledge of the first amended information, we point out that subject-matter jurisdiction is determined from the pleadings. *Simpson v. State*, 310 Ark. 493, 837 S.W.2d 475 (1992). Here, the record clearly reflects a properly signed amended information giving the trial court jurisdiction. We also note that, aside from his jurisdiction argument,

Hall gives no citations of authority or sound argument why the State's first amended information should taint the three subsequent amendments properly filed in this case.

Next, Hall argues his counsel was ineffective by failing to object to defective instructions of capital murder. Ark. Code Ann. § 5-10-101(a)(1) and (4) defines capital murder in relevant part as follows:

> (1) [I]f he commits or attempts to commit [burglary] and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life; or

> (4) With the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person.

Hall correctly asserts that the trial court, in its instruction defining capital felony murder, omitted the words "under circumstances manifesting extreme indifference to the value of human life." He argues this omission was error because, without it, a conviction entailing punishment by death could be based on conduct that would otherwise support, at most, only a conviction of manslaughter or negligent homicide. He further argues error ensued because the jury was allowed to render a guilty verdict without finding proof beyond a reasonable doubt of every element of the crime with which he was charged.

In *Skinner v. R.J. Griffen & Co.*, 313 Ark. 430, 855 S.W.2d 913 (1993), this court held that, henceforth, in cases involving a trial court's giving of an erroneous instruction involving the trial mechanism to be used in deciding either a civil or criminal case, we will not require the appellant to demonstrate prejudice. We said that such a requirement is often an impossible burden, and the requirement of an impossible burden, in effect, renders the requirement of correct instructions on the law meaningless. However, the court cautioned that an appellee may still demonstrate that the giving of an erroneous instruction was harmless, mentioning *Cates v. Brown*, 278 Ark. 242, 645 S.W.2d 658 (1983), and *Moore v. State*, 252 Ark. 526, 479 S.W.2d 857 (1972), as examples where the jury demonstrably was not misled because the jury rejected the theory of the erroneous instruction, and where the erroneous instruction was obviously cured by other instructions.

Under the *Strickland* test, as discussed above, Hall must show that, but for his counsel's failure to object to the trial court's omission when instructing the jury on capital felony murder, the jury would have reached a different decision. Here, he fails to do so because when reviewing the trial court's other correct instructions, we conclude the jury would have rendered the same verdict.

In determining whether reversible error resulted in giving an erroneous instruction omitting one element of the government's burden of proof, the Eighth Circuit Court of Appeals has stated its view on how to proceed, and we find it helpful here. That court, in *U.S. v. West*, 28 F.3d 748 (8th Cir. 1994), stated the following:

> This court's precedent . . . highlights the importance of reviewing an allegedly faulty jury instruction in context with the entire jury charge and the entire trial. *See United States v. McMillan*, 820 F.2d 251, 256 (8th Cir.), *cert. denied*, 484 U.S. 898, 108 S. Ct. 234, 98 L.Ed.2d 193 (1987). *In McMillan, this court examined a criminal jury instruction that, if viewed in isolation, appeared to remove one element of the government's burden of proof. Id. Nevertheless, this court determined that two other proper jury instructions and the context of the whole trial corrected any error in the isolated erroneous instruction, and thus the jury charge as a whole properly conveyed the government's burden to the jury.* (Emphasis added.)

In considering the tests set out in *Skinner* and *West*, we look at the trial and at all the instructions given to determine if the trial court's erroneous omission was cured and whether there was a likelihood the jury applied the defective capital felony instruction to lower the government's burden of proof. *Skinner*, 313 Ark. at 435; *West*, 28 F.3d at 751.

First, in reviewing other instructions given at Hall's trial, we find the jury was told that, if it had a reasonable doubt of Hall's guilt on the charge of capital murder, it was then to consider second-degree murder. It said that, to sustain this charge, the state must prove beyond a reasonable doubt that Hall knowingly caused the death of George DeClerk "under circumstances manifesting extreme indifference to the value of human life." As is readily seen when reading the trial court's instructions, if the jury gave any import to evidence which might have fallen within the element and phrase "under circumstances manifesting extreme indifference to the value of human life," the jury could have found Hall guilty of

the lesser-included offense of second-degree murder; it did not. Also, because the second-degree murder instruction was given the jury, Hall simply is wrong that, but for the omission of the "extreme indifference to the value of human life" phrase, only manslaughter or negligent homicide convictions could be had.

Before leaving this point, we also address Hall's reference to the trial court's having omitted the last sentence from the capital felony murder instruction. That instruction sets out the State's contention that George DeClerk's death occurred during the commission of the crime of burglary. Hall submits the trial court erred by leaving out the ending sentence, "If you do not find beyond a reasonable doubt that Hall committed or attempted to commit the crime of burglary, then he is not guilty of capital felony murder." Hall claims prejudice resulted because the State put on no evidence placing him at the scene of the crime, and without proof that he entered or remained unlawfully in DeClerk's residence, he could not be convicted of the capital felony murder offense.

First, we note the trial court, when giving the capital felony murder instruction, instructed the jury that, as a part of the charge of capital murder, the state must prove burglary beyond a reasonable doubt by showing Hall had entered or remained unlawfully in DeClerk's residence and he did so with the purpose of committing theft. And while Hall, by his argument here, fails to accept that the State made its case that Hall had burglarized DeClerk's residence and unlawfully converted DeClerk's personal property, we must disagree. In *Hall I*, we held there was more than sufficient evidence, albeit circumstantial, to show he committed the crime of burglary and capital murder. *Hall*, 315 Ark. at 391.

■ Hall makes another instruction argument, asserting his counsel was ineffective because he did not tender the lesser-included instruction on first-degree felony murder. We reject Hall's argument because Hall's defense was that he had nothing to do with the victim's death, and in fact claimed that two other men were implicated in the beating and killing of the victim. It would have made no sense to instruct on first-degree felony murder when Hall contended he did not kill the victim, but someone else did. *See Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993). As a matter of strategy, Hall's trial counsel could have foregone tendering or arguing any lesser offense to the jury, especially since the lower offense was inconsistent with his defense at trial. Matters of trial tactics and strategy are not grounds for postconviction relief, and

this reason alone is sufficient to affirm on this point. *See Vickers* v. *State*, 320 Ark. 437, 898 S.W.2d 26 (1995).

Hall's next argument is his trial counsel should have objected to the jury's return of a general verdict. He claims counsel's failure resulted in Hall not knowing which offense he was found guilty of and whether the jury found all elements of the offense had been proven beyond a reasonable doubt. In this argument, Hall also claims the jury was not instructed to return a unanimous verdict. Contrary to Hall's assertion, the record reflects the jury was told its verdict must be unanimous. The jury was polled and all twelve jurors agreed with the verdict. Regarding Hall's general verdict argument, he offers no citation of authority or convincing argument showing he was entitled to such a verdict. Therefore, Hall fails to show error on this point.

Hall also argues that his ineffective counsel improperly advised Hall to plead guilty to the theft of DeClerk's credit card which was found in his truck in White County. He complains that, because of this bad advice, the White County theft conviction was later used to enhance the evidence introduced at his capital murder trial in Randolph County, where DeClerk resided and was killed. Hall concedes his counsel's advice was a matter of strategy, but he argues such advice was unethical. We have held that matters of trial tactics and strategy are not grounds for postconviction relief. *Hilton* v. *State*, 325 Ark. 140, 924 S.W.2d 239 (1996). Hall additionally attempts to argue double jeopardy concerning the convictions rendered in White and Randolph Counties, but we dealt with that issue in *Hall I.* While Hall asserts his counsel failed to argue the double jeopardy issue correctly, we have held that postconviction relief does not provide an opportunity to reargue points already settled on appeal. *See O'Rourke* v. *State*, 298 Ark. 144, 765 S.W.2d 916 (1989).

Hall further argues that his counsel was ineffective because the counsel never requested funds to employ a private investigator to properly investigate pretrial discovery in preparation for trial. Hall fails to cite what specific evidence or testimony favorable to Hall that a private investigator would have found had one been employed. Further, Hall fails to cite specific testimony favorable to him which would have been elicited if further trial preparation had occurred. While Hall cites specific "missing" reports, he fails to show that these reports, had they been favorable to him, would have changed the outcome of the trial in light of the strong evidence

against him. On this point, Hall also contends that his counsel failed to object to a witness's in-court identification of him when she had been unable to identify him from a prior photographic lineup. However, as the State points out, Hall's counsel ably cross-examined the witness and elicited testimony of her prior failure to identify Hall. Further, the witness was able to support her in-court identification and presented testimony which the jury was justified in believing.

Finally, Hall claims property belonging to him was seized without a warrant from a third person in Nevada, and therefore, his counsel should have requested suppression of this evidence. Hall does not inform this court of the specific evidence so seized or of the specific facts surrounding its seizure. As the State notes, Hall does not have standing to claim an expectation of privacy in property held by another, even though that property may be his. *U.S. v. Payner*, 447 U.S. 727 (1980).

In sum, because the errors claimed by Hall amount to no error or to trial strategy, or because Hall failed to show the verdict would have been different, Hall has failed to meet his burden to obtain Rule 37 relief based on ineffective assistance of counsel. We affirm.

CORBIN and ROAF, JJ., concur.