Andrew SASSER *v.* STATE of Arkansas

CR 97-1246

993 S.W.2d 901

Supreme Court of Arkansas
Opinion delivered July 8, 1999

*Deborah R. Sallings*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Todd L. Newton*, Ass't Att'y Gen., and *James Gowen*, Law Student No. 301 Admitted to Practice Pursuant to Rule XV(E)(1)(b) of the Rules Governing Admission to the Bar of the Supreme Court and Under the Supervision of *Kelly K. Hill*, Dep. Att'y Gen., for appellee.

P ER CURIAM. The appellant, Andrew Sasser, was convicted of capital felony murder and sentenced to die by lethal injection. We affirmed the conviction and sentence in *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). Sasser subsequently filed a timely petition for postconviction relief pursuant to Arkansas Criminal Procedure Rule 37. In that petition, Sasser

raised several claims of ineffective assistance of counsel. The Circuit Court, after a hearing, entered written findings of fact and conclusions of law in which it denied relief. Sasser now appeals from that order. We affirm.

The facts giving rise to Sasser's conviction were set out in detail in our opinion in the direct appeal. Because the resolution of one of Sasser's ineffective-assistance-of-counsel claims requires our determination of the sufficiency of the evidence to support one of the felonies underlying the capital felony murder charge, we will now reiterate the background facts.

The state charged Sasser with capital felony murder for causing the death of Ms. Jo Ann Kennedy, on or about July 12, 1993, in the course of or in immediate flight from his commission or attempt to commit the victim's rape or kidnapping under circumstances manifesting extreme indifference to the value of human life. At the time of her death, the victim was working alone as the store clerk at the E-Z Mart in Garland. The autopsy report showed the victim died of multiple stab and cutting wounds and blunt-force head injuries, and that no anal or vaginal injury or any spermatozoa were present.

Following voir dire and immediately preceding the trial's commencement, the State announced, in camera, that it intended to offer evidence of prior crimes committed by Sasser in 1988 at an E-Z Mart in Lewisville against its store clerk, Ms. Jackie Carter, for which he was convicted of second-degree battery, kidnapping and rape. The State relied upon Rule 404(b) and this court's decision reported as *Thrash v. State*, 291 Ark. 575, 726 S.W.2d 283 (1987), and offered the evidence to prove appellant's *modus operandi* and intent. The State enumerated several points of similarity between the circumstances of the present crime and the 1988 crimes. Appellant objected, arguing "one previous crime does not a pattern make" and that the evidence had no probative value, only prejudicial effect. The trial court held *Thrash* was controlling, found the proposed testimony to be "more (probative) than prejudicial," and ruled it admissible. We affirmed this ruling. *Sasser v. State*, 321 Ark. at 447.

At the jury trial, Sasser stipulated that he caused the death of the victim while in the possession of and while driving his brother's pickup truck. Other stipulated facts included: Sasser stopped at the E-Z Mart in Garland City two or three times to buy chips and to use the telephone between the hours of 3:00 p.m. on July 11, 1993 and approximately 12:00 a.m. on July 12, 1993; the victim was discovered nude from the waist down; and the pants and panties found in the E-Z Mart's men's bathroom were hers.

The State's first witness at trial, Jeanice Pree, testified she and her mother, Gloria Jean Williams, lived across the street from the Garland City E-Z Mart. Pree testified she had an unobstructed view of the store. Pree testified she also worked at the E-Z Mart and believed its front door was locked at 12:00 midnight and thereafter customers were required to use a drive-through window. Pree testified she was sitting on her couch watching television when she looked out her window, saw the victim and a man behind the store counter and assumed he was a friend of the victim. Pree testified she looked back and saw the victim and the man coming to the store's front door. Pree testified she could tell the victim was being forced to come out because it looked like her hands were behind her back. Pree testified she telephoned 911. The police dispatcher testified he received Pree's 911 telephone call at approximately 12:46 a.m. on July 12, 1993, and that she stated "there was a woman that she believed was being killed at the E-Z Mart, being drug through the window."

Williams testified she watched the E-Z Mart from the window in her house while her daughter (Pree) telephoned 911. Williams testified she saw a truck leave the store, and then the victim "came around from the side of the E-Z Mart. She reached for the door and she just collapsed, right there."

Miller County Sheriff's Deputy Jim Nicholas testified the victim was found lying just outside the E-Z Mart door on the sidewalk, and appeared to be dead. Nicholas testified the victim was nude from the waist down, and what appeared to be her panties and pants were located in the men's restroom of the store. Nicholas testified one of the victim's shoes was in the front aisle

and one behind the counter, and a large wad of hair was found behind the cash register near the drive-through window. Nicholas testified blood spatters were observed at the drive-through window, on the store's "outside aisles," counter, and on the men's bathroom wall. Nicholas testified the drive-through window was open. Numerous items of physical evidence and photographs were introduced into evidence through the testimony of Nicholas and Miller County Sheriff's Department Investigator Toby Giles, including a photograph of the drive-through window and cash register area showing two plastic containers of nachos.

Arkansas State Police Investigator Robert Neal testified he and Miller County Sheriff H.L. Phillips interrogated Sasser at the Lafayette County Sheriff's Office in Lewisville for approximately two hours beginning around 7:45 p.m., on July 12, 1993. Sasser's tape recorded statement and a transcript of the same were introduced at trial and provided as follows. Sasser stated he drove up to the window at the Garland City E-Z Mart and ordered nachos from the victim. He described the victim as a "lady . . . [who] had an attitude" and was angry because someone else had ordered nachos, then failed to pick up the order. Sasser stated the victim tried to sell him two orders of nachos, but he declined. He stated they argued and the victim slammed the drive-through window on his hand. Sasser stated he jerked the window open whereupon the victim cut him with an knife-like object with a blade. Sasser stated he grabbed the victim and she jerked him through the drive-through window. He stated they scuffled, moving from the drive-through window area, down the counter area, out into the store's interior, back to the store office at the rear of the store, and up to the potato chip rack at the front of the store. Sasser stated the victim opened the store's front door, they exited the store and the victim followed him to his pickup truck, still fighting. Sasser stated he entered the vehicle and left.

Sasser stated he did not recall going into the E-Z Mart's restrooms but that he "had to go back there." He stated the victim repeatedly hit him with her fists while they scuffled. Sasser stated he wrested the victim's knife-like object from her and used it to hit her, finally dropping the object near the pickup truck. Sasser stated he did not know why the victim's clothes were

removed. When asked whether he did not remove the victim's clothes or did not remember doing so, he replied: "No sir." Sasser stated he did not try to rape the victim or to rob her.

The State's final witness, Ms. Carter, testified appellant attacked and raped her on April 22, 1988 at the E-Z Mart Store in Lewisville. Carter testified she was the only employee on duty when appellant entered the store at approximately 1:00 a.m. and purchased cigarettes, returned fifteen minutes later and purchased a soft drink, then returned five minutes later, asked to use the telephone and stated he had had a wreck on his motorcycle. Carter testified appellant then stood in the store after stating he was waiting on his wife to pick him up. Carter testified that, at approximately 1:35 a.m., a truck drove up and appellant went outside to talk to its occupants. Carter testified she moved from behind the cash register and began putting up items in the freezer when appellant approached her from behind and hit her on the back of the head with a soft-drink bottle. Carter testified she and appellant struggled and he continued to hit her, then forced her to a utility/bathroom located at the back of the store. Carter testified another man approached and appellant decided to take her out of the store. Carter testified appellant forced her out of the store, picked up his bicycle, and pushed Carter and the bicycle into an alley. Carter testified that, when the other man drove by, appellant forced her across the street, told her to pull down her clothes, pulled down his own clothes, and raped her. Carter testified appellant then told her he should not have done it and should kill her, whereupon she begged him not to and agreed to say a truck had dropped her off and appellant had found her. Carter testified appellant forced her back to the store where the police were waiting. Carter testified that, when she gained the opportunity to speak privately to a policeman, she identified appellant as her attacker.

### Failure to Object to Erroneous Jury Instructions

For his first argument in this postconviction appeal, Sasser argues that the trial court erred when it submitted erroneous instructions for attempted kidnapping and attempted rape to the jury. Sasser contends that we can review this trial error for the

first time under Rule 37 because the submission of an instruction that omits an essential element of the crime constitutes "structural error." Alternatively, Sasser also argues that his trial counsel was ineffective for failing to object to the erroneous instructions.

The abstract of the trial indicates that the jury was instructed to weigh Sasser's guilt according to instructions for capital felony murder and first degree felony murder. As indicated above, the jury was instructed that, in order to convict Sasser of either degree of felony murder, they had to find that he committed one of four possible underlying felonies: kidnapping, attempted kidnapping, rape, or attempted rape. The trial court, with no objection from Sasser's attorney, submitted erroneous jury instructions for the crimes of attempted kidnapping and attempted rape. Specifically, the jury was instructed that the attempt crime was completed when Sasser formed the mental state to commit the rape or kidnapping. The *actus reus*, or the portion of the instruction that required the jury to find that Sasser also took a "substantial step" toward completing the crime, was omitted from all of the instructions for the attempt felonies.

For the first part of his argument, Sasser contends that the erroneous instructions, because they omit an essential element of the attempt crimes, constitute "structural" trial error, and as such, can be reviewed for the first time under Rule 37. Sasser argues that the trial error is structural because the submission of the erroneous instructions affected his fundamental right to a trial by jury, or, as the Supreme Court enunciated in *In re Winship*, 397 U.S. 358 (1970), "the right of an accused to not be convicted except upon proof beyond a reasonable doubt of each element of the crime."

We have previously held that even constitutional issues must be raised in the trial court and on direct appeal, rather than in Rule 37 proceedings. *Finley v. State*, 295 Ark. 357, 748 S.W.2d 643 (1988). Rule 37 is a postconviction remedy, and as such, does not provide a method for the review of mere error in the conduct of the trial or to serve as a substitute for appeal. *Hulsey v. State*, 268 Ark. 312, 595 S.W.2d 934 (1980). We have made an exception, however, for errors that are so fundamental as to

render the judgment of conviction void and subject to collateral attack. *Collins v. State*, 324 Ark. 322, 920 S.W.2d 846 (1996). In *Collins*, for example, we held that the right to trial by a twelve-member jury is a fundamental right that fell with in the exception. When we review a "fundamental" or "structural" error either on direct appeal or through the exception just explained, the fundamental nature of the error precludes application of the "harmless-error" analysis.

To support his contention that the omission of the *actus reus* element from the attempt instructions was structural error, Sasser draws an analogy between his case and *Sullivan v. Louisiana*, 508 U.S. 275, (1993), in which the Supreme Court held that an erroneous "reasonable doubt" instruction was structural error, and therefore not subject to the "harmless-error" analysis. In *Sullivan*, the Court noted that in a case where the jury convicts according to an erroneous instruction about the State's burden of proof, there has been no actual finding of guilt as required by the Sixth Amendment. The harmless-error standard of review could not be applied because to do so would force the appellate court, inappropriately, to speculate about what a jury would have done had it been properly instructed. *Sullivan v. Louisiana*, 508 U.S. at 280.

The omission of a single element of a jury instruction in a case where the jury is instructed on multiple offenses, however, differs from the situation in *Sullivan v. Louisiana*, in which the error affected the basic burden of proof in a criminal case, and therefore, was more insidious than the error in this case. In *Sullivan*, the harmless-error analysis could not be applied because the erroneous burden-of-proof instruction, an instruction upon which the proper application of all other instructions depends, rendered a reliable finding of guilt impossible. In this case, the jury was properly instructed according to the complete offense for kidnapping, and, therefore, it is still possible that there was a reliable finding of guilt on capital felony murder in this case.

The distinction between the error that occurred in this case and the error in *Sullivan v. Louisiana* has recently been recognized by the Supreme Court in *Neder v. United States*, 527 U.S. (Slip Opinion, June 10, 1999), a case whose holding is directly on

point for the case at bar. *See also California v. Roy*, 519 U.S. 2 (1996). In *Neder*, the Supreme Court held that the omission of an element from a jury instruction in a criminal trial is not "structural error" and therefore, can be subject to the harmless-error standard of review. We have also previously observed that this is an error that is subject to the harmless-error standard of review. *Hall v. State*, 326 Ark. 318, 933 S.W.2d 363 (1996). Accordingly, the omission of the *actus reus* element from the instructions for attempted rape and attempted kidnapping is not "structural error" and, therefore, an argument assigning error to the omission cannot be considered for the first time in a Rule 37 proceeding.

■ Sasser makes the alternative argument, however, that his trial counsel was ineffective for failing to object to the erroneous instructions. We measure the effectiveness of trial counsel according to the standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). According to that standard, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. The petitioner must show there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, *i.e.*, the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. In making a determination on a claim of ineffectiveness, the totality of the evidence before the judge or jury must be considered.

■ We conclude that the Circuit Court was not clearly erroneous when it denied relief on the ineffective-assistance-of-counsel claim. *Catlett v. State*, 331 Ark. 270, 962 S.W.2d 313

(1998). While we have little doubt that Sasser's trial counsel rendered deficient performance when he failed to object to the omission of the *actus reus* element in the attempt felonies, we find that Sasser has failed to fulfill the prejudice prong of the *Strickland* analysis, or more specifically, that there is a "reasonable probability" that the outcome of his trial would have been different if his attorney had objected to the erroneous instructions. We reach this finding because the jury was properly instructed on the complete offense of kidnapping, which, as we will soon explain, is supported by ample evidence in the record. Additionally, we find that if Sasser's attorney had objected and the *actus reus* was included in the attempt instructions, there was sufficient evidence to support attempted rape and attempted kidnapping as the underlying felonies.

Sasser argues, however, that we cannot determine if he has satisfied the prejudice prong of the *Strickland* analysis by evaluating the sufficiency of the evidence to support either the complete offense of kidnapping or the attempt felonies, if they had been properly submitted to the jury, because of the analysis we applied in *Hall v. State, supra.* Sasser contends that we can only determine prejudice according to the harmless-error analysis that we explained in *Hall.* That is, that the State can demonstrate that the submission of an erroneous instruction was harmless by showing that the jury was not demonstrably misled because the jury rejected the theory of the erroneous instruction. We further explained that the State can also show that the erroneous instruction was harmless because it was cured by another instruction. *Hall v. State,* 326 Ark. at 323. Sasser suggests that if we go beyond that harmless-error analysis, we would impermissibly substitute our judgment in place of the jury on the sufficiency of the evidence.

As an initial matter, we must take this opportunity to draw a clear distinction between the analysis that takes place on direct appeal when an erroneous instruction is submitted to the jury, and the analysis that we apply to evaluate an ineffective-assistance-of-counsel claim. As explained above, the "harmless-error" standard of review is applied on direct appeal.

The prejudice prong of an ineffective–assistance–of–counsel claim, however, involves a different inquiry. There, we must determine whether but–for counsel's error, there is a "reasonable probability" that the outcome of the trial would be different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. While we may resolve this issue by using the harmless–error standards enunciated above, our analysis is not limited to those criteria. We may also evaluate other factors to determine if there is a "reasonable probability" that the outcome of the trial would be different.

Accordingly, we must determine if Sasser would have been acquitted if, pursuant to the objection, the *actus reus* element would have been included in the attempt instructions, or however unlikely, the attempt instructions were pulled as alternatives to give to the jury. We conclude that there is no reasonable probability that Sasser would have been acquitted of capital felony murder.

In this case, the jury was given the following instruction with regard to kidnapping:

> To prove kidnapping, the State must prove beyond a reasonable doubt first, that Andrew Sasser did, without the consent of Joanne Kennedy, restrain her so as to interfere substantially with her liberty, and second, that Andrew Sasser restrained Joanne Kennedy with the purpose of facilitating the commission of murder or the flight thereafter, or inflicting physical injury upon her or engaging in sexual intercourse.

The jury was also instructed as follows regarding the offense of rape:

> To prove rape the State must prove beyond a reasonable doubt first, that Andrew Sasser engaged in sexual intercourse with Joanne Kennedy and second, that he did so by forcible compulsion.

Furthermore, AMCI 2d 501, the model jury instruction for criminal attempt that Sasser alleges should have been given to the jury, provides that to prove an attempt, the State must prove beyond a reasonable doubt:

*First*: That the defendant intended to commit the offense of (rape or kidnapping);

*Second*: That the defendant purposely engaged in conduct that was a substantial step in a course of conduct intended to culminate in the commission of (rape or kidnapping);

*Third*: That defendant's conduct was strongly corroborative of the criminal purpose.

██ As we indicated earlier, we conclude that there is ample evidence in the record to support a finding of either kidnapping, attempted kidnapping, or attempted rape as the underlying felony for the capital murder charge. Through the testimony of eyewitnesses and the investigating officers, the State introduced evidence that indicated that Sasser forced his way into the convenience store through the drive through window, engaged in an extensive struggle with Ms. Kennedy that led to the back of the store and into the men's bathroom, where her slacks and panties were found. Sasser then lead Ms. Kennedy, with her arms restrained behind her and nude from the waist down, through the front door of the store, and took her to the area where his vehicle was parked. Sasser drove away and Ms. Kennedy walked to the front of the store, fell to the ground, and died as the result of several stab wounds. With this evidence in the record, there is no reasonable probability that a proper objection from Sasser's attorney would have changed the outcome of the trial.

### Failure to Object to Prosecutor's Comments

Sasser next argues that he is entitled to postconviction relief because his trial counsel failed to object to several comments made by the prosecutor during his arguments to the jury during both the guilt and penalty phases of the trial. He also suggests that postconviction relief would be warranted because the trial court failed, on its own motion, to admonish the jury or declare a mistrial.

Sasser alleges that the prosecutor made several improper comments in his closing argument during the guilt phase. Sasser first argues that the prosecutor improperly indicated that if he thought that Sasser committed first-degree murder rather than capital mur-

der, he "would have considered doing something less." According to Sasser, that remark expressed the prosecutor's personal opinion about the crime for which Sasser should be convicted.

Sasser next argues that the prosecutor improperly argued, apparently in response to the defense's argument that Jackie Carter's testimony was not relevant, that Ms. Carter "wouldn't have been over here testifying yesterday if that evidence hadn't been ruled by the Court as relevant and probative of this guy's intent." Sasser contends that this remark was inappropriate because it bolstered the credibility of a State's witness and "directly added the court's imprimatur to that testimony."

Sasser also contends that the prosecutor inappropriately argued that Sasser failed to express remorse for causing Joanne Kennedy's death. Specifically, Sasser argues that both his right against self-incrimination and his right to a jury trial were violated when the prosecutor asked the jury the following rhetorical question: "Did you hear any sign of remorse from him? None."

Sasser argues that the prosecutor continued to make improper remarks in his closing argument during the penalty phase of the trial. Sasser alleges that the prosecutor again inappropriately emphasized Sasser's apparent lack of remorse for Ms. Kennedy's death. He also contends that the prosecutor erroneously declared to the jury that there is no role for mercy in the criminal justice system.

In the portion of its order that deals with this claim, the Circuit Court first observes the following:

> Several of these remarks look worse on paper than they did in the courtroom. The prosecutor's statements that he would have charged the petitioner with something else if he had been guilty of anything else and his statement that mercy has no place in the criminal justice system were more a way of speaking than a flat statement and were understood as the prosecutor's opinion about the evidence that was presented, which is permissible. It was the prosecutor's opinion that the petitioner was guilty only of capital murder and that there was no room for mercy in this case. Contrary to the petitioner's argument, counsel are permitted to express their opinions within reason: "Although it is not good

practice for counsel to inject their personal beliefs into the closing arguments, mere expressions of opinion by counsel in closing argument are not reversible error so long as they do not purposely arouse passion and prejudice." *Neff v. State*, 287 Ark. 88, 696 S.W.2d 736, 740 (1985).

As to the argument attacking the statement that the testimony of the previous victim was relevant and probative of the petitioner's intent because the court had ruled that it was, the statement was correct, . . . and the evidence would not have been admitted had the court not so ruled. Further, the juror (sic) were instructed that they should accept without question the court's rulings on the admissibility of the evidence. If there was a valid objection to this remark, it was not that the remark was erroneous.

Likewise, the Circuit Court found that the prosecutor's remarks during the penalty phase were also merely expressions of the prosecutor's opinion. The Circuit Court did find, however, the prosecutor's remarks about remorse to be "technically objectionable," but suggested that they had little effect on the jury because the evidence was overwhelming, and only the degree of homicide was at issue.

To the extent that Sasser argues that the trial court erred when it did not, on its own motion, seek to remedy the alleged prejudice caused by the prosecutor's remarks, we conclude that he cannot raise that argument for the first time in a Rule 37 proceeding. This is an allegation of trial error that should have been raised on direct appeal. As we explained above, such an error can only be raised for the first time under Rule 37 if it is so fundamental as to render the judgment void and subject to collateral attack. In *Pitcock v. State*, 279 Ark. 174, 649 S.W.2d 393 (1983) we held that a trial error involving a remark made by a prosecutor during closing argument was not "fundamental." Accordingly, we may only consider Sasser's claim that his counsel was ineffective for failing to object to prosecutor's comments.

Regarding the ineffective-assistance-of-counsel claim, the Circuit Court noted that during the postconviction hearing, Sasser's defense counsel testified that he typically does not object during closing arguments unless the comments are " 'absolutely

outrageous' because to object to anything less only highlighted the comment and made the jury, which might not have understood the significance of the remark, pay attention to it." The Circuit Court then concluded that Sasser's attorney did not object to the prosecutor's comments as a matter of trial strategy, and therefore, did not render deficient performance.

■ We conclude that the Circuit Court's denial of relief on the ineffective-assistance-of-counsel claim is not clearly erroneous. *Catlett v. State, supra.* Experienced advocates might differ about when, or if, objections are called for since, as a matter of trial strategy, further objections from counsel may have succeeded in making the prosecutor's comments seem more significant to the jury. *Neff v. State,* 287 Ark. 88, 696 S.W.2d 736 (1985). Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct. *Cohen v. United States,* 996 F.Supp. 110 (D. Mass. 1998).

### Failure to Lodge Due Process Objection

Sasser next argues that his trial counsel was ineffective for failing to lodge a due process-based objection to the admission of Jackie Carter's testimony. During the trial, Ms. Carter's testimony, while evidence of a prior crime, was ruled admissible because it had independent relevance toward proving Sasser's modus operandi and intent in the crime against Joanne Kennedy, and because its probative value was not outweighed by the danger of unfair prejudice. Sasser now argues that his counsel, in addition to arguing that Ms. Carter's testimony was inadmissible pursuant to Rules 403 and 404(b) of the Arkansas Rules of Evidence, should have also argued that the admission of the testimony would violate the Due Process Clause. Sasser contends that his rights to due process and a fair trial were violated because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice, and that an appropriate objection during trial would have either led to the exclusion of the evidence or a different outcome in the direct appeal.

■ We find no merit to this claim because it is unlikely that a due process–based objection would have achieved any more than counsel's objections based on the Rules of Evidence. In fact, such an objection would have been redundant because fairness to the party who opposes the admission of the evidence is built in to Rule 403 and Rule 404(b). According to Rule 404(b), evidence of prior crimes, wrongs, or acts is generally not admissible unless it has independent relevance. Despite having independent relevance, however, the evidence must still pass the balancing test in Rule 403, which provides that relevant evidence may be excluded if the probative value is outweighed by, among other things, the danger of unfair prejudice. The Advisory Committee Note to Rule 403 explains that "unfair prejudice" within the context of the rule, means "an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one." Accordingly, it is unlikely that a due process–based objection would have been any more successful during trial, or in the direct appeal, and counsel did not perform deficiently by limiting the grounds for his objection to the Rules of Evidence.

### Failure to Seek Limiting Instruction

Sasser next argues that his trial counsel was ineffective for failing to request a limiting instruction when Jackie Carter's testimony was admitted. In the direct appeal, we concluded that we could not reach Sasser's argument that the trial court erred by not giving the jury a limiting instruction because Sasser did not request such an instruction. Sasser now argues that he was "absolutely entitled" to the limiting instruction, and that but for his attorney's failure to request it, the outcome of the trial, or the appeal, would have been different.

In an affidavit that he filed in the postconviction proceeding, Sasser's trial counsel stated that at the time that Jackie Carter's testimony was admitted, his strategy was to avoid drawing more attention to its content. He suggested this strategy manifested itself in both his decision to decline cross-examining Ms. Carter and in his decision to refrain from seeking a limiting instruction. Sasser responds, however, by arguing that his attorney's claim that

he made a tactical choice is belied by his decision to argue the absence of the instruction as trial error in the direct appeal.

In its order, the Circuit Court resolved the apparent conflict by finding that counsel engaged in legitimate trial strategy when he chose not to seek the limiting instruction. Specifically, the court seemed to find the decision to not cross-examine Ms. Carter as corroboration that counsel's omission was a matter of trial strategy rather than error. The order states as follows:

> In this case, petitioner's counsel was faced with overwhelming evidence against petitioner, not the least of which was evidence that petitioner had attacked another convenience store clerk under very similar circumstances a few years earlier. Because petitioner's counsel was unsuccessful in keeping this evidence out, petitioner's counsel was forced to consider how to deal with it in front of the jury. In an effort not to highlight Jackie Carter's testimony, petitioner's counsel chose not to request the instruction that petitioner now alleges would have been requested. Counsel's strategy with respect to that instruction was the same as it was with respect to her trial testimony, which is evidenced by counsel's decision not to cross-examine her.

Accordingly, the Circuit Court concluded that counsel's choice not to seek the limiting instruction was a matter of trial strategy that could not be a basis for a finding of ineffective assistance of counsel.

We have no cases that decide the issue of whether the failure to seek a limiting instruction upon the admission of evidence of prior crimes could be a matter of trial strategy, and therefore, not cognizable as an ineffective-assistance-of-counsel claim. While the Circuit Court's conclusion is not without support from other jurisdictions[1], the better approach is to resolve the issue according to the prejudice prong of the *Strickland* analysis. In *United States v. Liefer*, 778 F.2d 1236 (7th Cir. 1985) for example, the defendant argued that his trial counsel was ineffective for not seeking a limiting instruction when evidence of the defendant's prior bad acts

---

[1] In *Abbott v. State*, 726 S.W.2d 644 (Tex. App. 1987), the court held that "(a)lthough hindsight may suggest a limiting instruction of some nature, it is reasonable that, as a trial tactic, counsel did not wish to remind the jury of those matters."

was admitted. The Seventh Circuit Court of Appeals, in denying relief on the ineffective-assistance-of-counsel claim, applied the second prong of the *Strickland* analysis in the following manner: "(w)e need not decide whether . . . counsel 'fell below an objective standard of reasonableness,' (citation omitted) because, in light of the substantial evidence against (the defendant), there is no probability that the outcome of his trial was prejudiced by the alleged deficiency." *See also United States v. Ramos*, 971 F.Supp. 186 (E.D. Pa. 1997); *Easley v. State*, 978 S.W.2d 244 (Tex. App. 1998). Accordingly, we must determine whether but for counsel's failure to request the instruction, the outcome of the trial would have been different.

■ As we explained above, there was ample evidence, even excluding Jackie Carter's testimony, to support a conviction for capital felony murder with either kidnapping, attempted kidnapping, or attempted rape as the underlying felony. Under these circumstances, there is no reasonable probability that the outcome of the trial would have been different if Sasser's attorney had obtained a limiting instruction.

■ As for the allegation that the failure to request the instruction prejudiced Sasser on appeal, we have to evaluate the likelihood of success attached to an allegation that the trial court erred in refusing to give the instruction when it was requested. We conclude that such an allegation would not have led to a reversal because even if the trial court refused to give the instruction once it was requested, the error would have been harmless in light of the overwhelming evidence, excluding Jackie Carter's testimony, that was introduced against Sasser. *See United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996); *United States v. King*, 897 F.2d 911 (7th Cir. 1990).

*Failure to Seek Appointment of Co-Counsel*

In his final argument in this appeal, Sasser contends that he did not receive effective assistance of counsel during his trial because he was not represented by two attorneys as required by the minimum standards promulgated by the Arkansas Public Defender Commission and the Guidelines for Appointment and Perform-

ance of Counsel in Death Penalty Cases issued by the American Bar Association. Sasser argues that despite the existence of these standards and guidelines, his attorney did not seek the appointment of another attorney to assist him, nor did the trial court appoint an attorney on its own motion. Sasser then makes the bare allegation that because additional counsel was not appointed, he received ineffective assistance of counsel.

We affirm the Circuit Court's denial of relief on this claim. Sasser has not made any specific allegation as to how the absence of a second attorney affected his trial counsel's performance, or how he was prejudiced by the fact that he was represented by one attorney. Conclusory allegations cannot be a basis for postconviction relief. *Brooks v. State*, 303 Ark. 188, 792 S.W.2d 617 (1990).

Affirmed.