SLIP OPINION



Cite as 2013 Ark. App. 681

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
**No.** CR–12–564

| | |
|---|---|
| CHAD EDWARD MALCUM<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** November 13, 2013<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. 60CR-11-2260]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br>PETITION FOR REHEARING DENIED; SUBSTITUTED OPINION ISSUED |

## BRANDON J. HARRISON, Judge

In *Malcum v. State*, 2013 Ark. App. 499, we affirmed the Pulaski County Circuit Court's sentencing order entered against Malcum following a jury trial. Malcum challenged our decision through a petition for rehearing. We deny Malcum's petition for rehearing but issue this substituted opinion.

A jury found that Chad Edward Malcum had committed an aggravated robbery against Eugene Cherry, in April 2011, while Cherry was at his own home. Malcum attacked Cherry after he refused to give Malcum a ride to Conway; Malcum then stole Cherry's car. An unidentified person called 911. A neighbor, Donnell Jackson, reportedly saw Cherry's car speed away from his home and became suspicious that the elderly man would drive in such haste. So Jackson, according to a police report, went to

Cherry's house, found him in distress, and carried him outside so he could receive emergency treatment.

The circuit court sentenced Malcum to serve 300 months' imprisonment as a habitual offender. Malcum appeals his conviction, arguing that the circuit court erred by making him go to trial before Donnell Jackson could be located and compelled to testify about the robbery. Malcum also argues that a second reversible error occurred when the court strayed from the model jury instructions.

We hold that Malcum was not denied justice when he was denied a continuance. And though we agree with Malcum that the court technically erred when instructing the jury at the trial's beginning, the error was a harmless one because the jury was properly instructed before it deliberated the case and returned its guilty verdict.

I. *The Continuance Issue*

One day before the March 2012 jury trial started, the circuit court held a hearing on Malcum's motion to continue the trial given Jackson's unavailability as a witness. The record indicates that no party had successfully contacted Jackson since the robbery. The court ruled that it was not for a lack of trying that neither the State nor Malcum could find Jackson; it then ordered the sheriff's office to find Jackson and jail him overnight. Before adjourning for the day, the court then told defense counsel:

> But I should tell you, sir, that if he is found after tomorrow, it is my present intention to keep him confined in the county jail until such time as we get this case tried. I intend to reschedule this case tomorrow for another trial date or date certain and I want everybody to know that we will proceed to trial on that date with him or without him. So everybody needs to have a contingency, trial with Donnell Jackson, trial without Donnell Jackson. Put that in your war plan.

2

The sheriff's office never found Jackson. So Malcum renewed his continuance request the following morning, which was the first day of trial, before jury selection started. Malcum's attorney also filed an affidavit on 15 March 2012, pursuant to Ark. Code Ann. § 16-63-402 (Supp. 2011), which stated, among other things, that a woman claiming to be Jackson's wife had told him that Jackson would be out of town for at least thirty days. In addition to the affidavit, three witnesses told the court that Jackson had a surrender date to authorities on the following Monday.

During the day-of-trial continuance hearing, Malcum argued that Jackson was the unidentified 911 caller and that his testimony was needed to impeach Cherry's anticipated trial testimony. Without Jackson's presence at trial, Malcum argued, the jury would not get a "great deal" of information. For its part, the State said that it would not call Jackson as a witness—and it stipulated that Jackson did not see Malcum hit Cherry and that "there are a lot of if's involved" on whether Jackson would actually appear.

The court denied Malcum's second motion to continue the case. In doing so, it ruled that the defense had made a good-faith, diligent effort to locate Jackson and that his absence was not Malcum's fault. The court also noted that the State did not oppose the continuance, and it credited the affidavit that Thomas Kendrick (one of Malcum's lawyers) had filed. A key point to the court's denial was that no one disputed that Jackson never saw who beat and robbed Cherry. The court reasoned that Jackson's absence would not prevent Malcum from fully defending the aggravated robbery charge because the probable effect of Jackson's testimony at trial, even if he did testify, was that he did not personally see Malcum beat and rob Cherry. Finally, though the court recognized the

possibility that the sheriff or federal authorities might find and detain Jackson before or during the trial, it was "not at all certain whether or not [Jackson] will show up or if he does show up, whether he will testify."

A circuit court's decision to deny a continuance due to a witness's absence is a discretionary one. A number of considerations, however, guide and constrain its discretion on this issue. Ark. Code Ann. § 16-63-402 (Supp. 2011); Ark. R. Crim. P. 27.3 (2012); *Brown v. State*, 374 Ark. 341, 347, 288 S.W.3d 226, 232 (2008) (citing caselaw factors for circuit courts to consider). Our statutes, rules, and caselaw work together to protect an accused's state and federal constitutional rights "to have compulsory process for obtaining witnesses in his favor" and to give him due process of law. U.S. Const. amends. VI, XIV; Ark. Const. art. 2 § 10 (1873). Our supreme court has held that denying an accused's motion for a continuance—when an unavailable witness is also a fugitive from justice—is not an abuse of discretion and does not necessarily violate an accused's rights. *Parker v. State*, 179 Ark. 1064, 20 S.W.2d 113 (1929) (denying a continuance was not reversible error when the attendance of a witness, who had an outstanding warrant, could not be secured); *Harris v. State*, 169 Ark. 627, 629, 276 SW 361, 363 (1925) (denying a continuance was not reversible error when the desired witness had left town because of another charge against him and was therefore not likely to return). The bottom line is we will not reverse a court's denial of a continuance request unless it equates to a denial of justice. *Brown*, 374 Ark. at 347, 288 S.W.3d at 231.

Here, Malcum argues again that the court's decision to deny him a continuance was an abuse of discretion because he had the right to compel Jackson's attendance, that

Jackson was a material defense witness, and the court told him the day before trial that it intended to reschedule the case. The State responds that Jackson's testimony was immaterial and that, in any event, there was no good reason to believe that postponing the trial would have resulted in Jackson's presence at trial.

We hold that the circuit court sufficiently protected Malcum's legal interests under the law and that denying a continuance in this case was not an abuse of discretion tantamount to a denial of justice. The court held two hearings on the continuance issue, received much evidence on point, and engaged the parties by asking questions. The court also forthrightly told the parties to be prepared for trial "with or without Donnell Jackson." That the court changed its mind about its intent to reschedule the case on the day of trial does not necessarily mean that Malcum was denied justice. The circuit court is not required to absolutely ensure Jackson's presence at trial, just that "compulsory process" be available to Malcum, and it was. Specifically, the court had sent the sheriff to find Jackson and otherwise used its power to compel Jackson's appearance at Malcum's trial. Malcum did not have an absolute right to delay the trial until Jackson could be rounded up, which might well have been an unreasonably long amount of time.

## II. *The Harmless Jury-Instruction Error*

Malcum also argues on appeal that the circuit court erroneously instructed the jury—after the jury was selected but before the jurors were excused at the end of the first day of trial. Here is the instruction Malcum challenges:

> As jurors, you're the sole and exclusive deciders on who—on credibility of the witnesses who testify in the case, which means simply that it's you who decide whether to believe or disbelieve a particular witness.

SLIP OPINION

In making this determination, you will apply the test of truthfulness that you apply in your daily lives. You're not required to believe the testimony of any witness simply because it's given under oath. You may believe or disbelieve all or any part of the testimony of any witness.

You should not decide any issue of fact merely on the basis of the number of witness who testify on each side of that issue. The testimony of one witness believed by you is sufficient to prove any fact.

Before giving that contested instruction, the court read other instructions to the jury, including ones on reporting for duty the next morning, leaving their minds open until they heard all the evidence, not talking with anyone about the case, considering information from any source outside the courtroom, observing courtroom procedure, and taking notes during the trial. Malcum promptly objected to the instruction. As a substantive matter, he argued that the instruction had no legal basis. As a timing matter, he said that the jury instructions should be given after the jury has heard the parties' cases, not before they were presented.

At a bench conference the next morning, before opening statements, Malcum renewed his objection to the instruction we have reproduced above; he argued that the instruction would allow the jury to find him guilty by applying a standard of proof less than beyond a reasonable doubt. He then asked the court to admonish the jury to disregard any instructions from the day before that were "not contained in the other Arkansas statutory law or in the jury instructions AMCI second 100A and 100B." Malcum also moved for a mistrial based on the court's alleged error. The court denied that motion and overruled other objections.

We review all of Malcum's jury-instruction issues under an abuse-of-discretion standard. *See Clark v. State*, 374 Ark. 292, 305, 287 S.W.3d 567, 576 (2008). Malcum is

not required to show that prejudice arose from the court's mistaken jury instruction. *Hall v. State*, 326 Ark. 319, 322, 933 S.W.2d 363, 366 (1996). In this type of case, the State must show that the erroneous instruction was, on the whole, a harmless error. *Id*. An erroneous instruction can be harmless if it was obviously cured by other instructions. *Id*.

Our supreme court has recently reiterated that a circuit court should not use a non-model instruction unless the applicable model instruction inaccurately states the law. *Fincham v. State*, 2013 Ark. 204. Here, the court did not use the model instruction on credibility. It told counsel that "[n]othing I told this jury yesterday varies from any statement of Arkansas law. I have not heard [Defense Counsel] [cite] a single Arkansas court authority." The court's memory of the event was mistaken. Its rendition added a flourish here and there and clearly deviated from the model criminal jury instructions.

The important legal question, however, is whether the court's indisputable deviation from the model instruction on credibility was so grave that a mistrial should have been ordered. *Phavixay v. State*, 2009 Ark. 452, at 10, 352 S.W.3d 311, 318 (2009). Malcum thinks so, mainly because he believes the court's deviation from the model instructions diluted the potent burden of proof the State had in this criminal case. We disagree. The stray remarks related to the credibility of the witnesses or the jurors' personal observations about them, not the State's burden of proof. Contextually, the court had just finished talking about juror notetaking and then moved to telling the jury about their role in the criminal-trial process. More specifically, the court's stray remarks came when it provided its own rendition of AMI Crim. 2d 103 and 104—two

instructions that tell jurors that they may use their personal observations and experiences as they assess witnesses' credibility.

We hold that the State has shown that the circuit court's recitation of non-model instructions on credibility and on personal observations and experiences was harmless error in this case. *Hall*, *supra*. Right before the case was submitted to the jury for decision, the circuit court instructed the jury using the model instructions on the credibility of the witnesses, the weight of the evidence, and the burden of proof, which purged any arguable prejudice stemming from the trial's false start. These model instructions were the same ones that Malcum had requested when he first disputed the court's free-form version at the trial's start. In *Jones v. State*, 318 Ark. 704, 889 S.W.2d 706 (1994), our supreme court acknowledged that while the circuit court may have erred in instructing the jury prematurely, the error under the facts presented was harmless. We likewise acknowledge that a concerning glitch was injected into this case's beginning, but it neither involved the State's burden of proof nor the elements of the crime that Malcum was charged with committing. And most importantly, the error was corrected before the jury began deliberating Malcum's legal fate, making the giving of the earlier non-AMI instruction harmless error given the facts in this case  *Id*.

### III.  *Conclusion*

We affirm Malcum's conviction. In doing so, we take this opportunity to remind the circuit courts to heed our supreme court's admonition:  use the applicable model instructions as a matter of course unless they misstate the law on the issues under instruction.

Petition for rehearing denied; substituted opinion issued.

GLADWIN, C.J., and WALMSLEY, WHITEAKER, VAUGHT, and HIXSON, JJ., agree.

*Don Thompson*, Deputy Public Defender, by: *Thomas Kendrick*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.