Leslie G. COTHREN *v.* STATE of Arkansas

CR 99-597 42 S.W.3d 543

Supreme Court of Arkansas
Opinion delivered May 10, 2001

*Stuart Vess*, for appellant.

*Mark* Pryor, Att'y Gen., by: *Mac Golden*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. Appellant, Leslie G. Cothren,[1] appeals the Cleburne County Circuit Court's denial of his petition for postconviction relief pursuant to Ark. R. Cr. P. 37. Mr. Cothren was convicted of manufacturing methamphetamine in an amount of at least 200 grams but less than 400 grams, and possession of methamphetamine with intent to deliver in an amount within the same weight range. He argues that one of his convictions was obtained in violation of his rights against double jeopardy and therefore should be vacated. He further argues that he was denied a fair trial by the failure of both trial counsel and the trial court to take appropriate action in response to an improper closing argument by the prosecuting attorney. We affirm the circuit court's denial of postconviction relief.

On September 22, 1996, officers from the Cleburne County Sheriff's Department, the Arkansas State Police, and the Arkansas Drug Enforcement Agency were dispatched to the Ozark Dental Lab in Quitman, Arkansas, where a possible burglary was underway. When the officers arrived, a man inside was threatening to come out shooting. In fact, there was no burglary. Bryan Barber, who had called 911, was under the influence of methamphetamine when he eventually exited the building and surrendered to the police. The officers then searched the building to be certain no one else was inside and discovered several items of paraphernalia commonly used in the manufacture of methamphetamine, as well as instructions copied from a technical manual that detailed how to manufacture the drug. Mr. Barber informed the officers that he had loaned his red Dodge pickup to Mr. Cothren, who operated the dental lab. Mr. Cothren appeared approximately ten minutes later in Mr. Barber's truck. Officers conducted a pat-down search of Mr. Cothren and found a plastic bag containing 1.4 grams of powdered crystal methamphetamine, an amber, screw-cap bottle containing 0.442 grams of methamphetamine, and $360 in cash in his pockets. Officers were able to look through the windows in the truck's camper and see a glass jar full of ether and two cake pans containing methamphetamine in an unfinished state. The two cake pans contained a total of 326.9 grams of a gummy substance that was determined to be twenty-five percent methamphetamine.

---

[1] Mr. Cothren's name has been misspelled "Cothern" in the style of the case as filed with the Supreme Court Clerk. We have corrected the spelling for purposes of this opinion in order to be consistent with the prior appeal filed by Mr. Cothren.

Mr. Cothren was charged by information in the Cleburne County Circuit Court with one count of manufacturing a controlled substance (methamphetamine) in an amount greater than 200 grams and less than 400 grams and one count of possession of a controlled substance (methamphetamine) with intent to deliver in an amount greater than 200 grams and less than 400 grams, both Class Y felonies proscribed by Ark. Code Ann. § 5-64-401 (Supp. 1999). Following a jury trial, Mr. Cothren was convicted on both counts. The trial court sentenced him to twenty years' imprisonment on each count, to be served consecutively, and imposed a fine of $10,000 on each count.

Mr. Cothren's conviction was affirmed on direct appeal. *Cothren v. State*, CACR97-1230 (Ark. App. May 6, 1998). He then petitioned for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1. The trial court denied the petition and this appeal followed. For reversal, Mr. Cothren argues that his conviction and sentence is in violation of double jeopardy and that he was denied due process and effective assistance of counsel by the failure of trial counsel or the trial court to respond appropriately to an improper closing argument by the prosecuting attorney.

We will not reverse the denial of a Rule 37 petition unless the trial court's decision is clearly erroneous. *Catlett v. State*, 331 Ark. 270, 962 S.W.2d 313 (1998) (per curiam), citing *Thomas v. State*, 330 Ark. 442, 954 S.W.2d 255 (1997). The question on appeal is whether, based upon the totality of the evidence, the trial court clearly erred in holding that counsel's performance was not ineffective under the standard set in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Slocum*, 332 Ark. 207, 964 S.W.2d 388 (1998). We recently reiterated the *Strickland* standard for assessing the effectiveness of trial counsel:

> According to that standard, the petitioner must show first that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Second, the petitioner must show that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. The petitioner must show

there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.

*Sasser v. State*, 338 Ark. 375, 385, 993 S.W.2d 901, 907 (1999). Furthermore, we have stated many times that "a lawyer's choice of trial strategy that proved ineffective is not a basis for meeting the *Strickland* test." *State v. Slocum*, 332 Ark. at 213, 964 S.W.2d at 391, (citing *Vickers v. State*, 320 Ark. 437, 898 S.W.2d 26 (1995); *Monts v. State*, 312 Ark. 547, 851 S.W.2d 432 (1993)).

■ A petitioner may also qualify for Rule 37 relief, regardless of trial counsel's performance, if he demonstrates error so fundamental as to render the judgment of conviction void and subject to collateral attack. *Sasser v. State, supra*. A violation of double jeopardy is just such an error. *Travis v. State*, 286 Ark. 26, 688 S.W.2d 935 (1985); *Martin v. State*, 277 Ark. 175, 639 S.W.2d 738 (1982).

## I. Double Jeopardy

■ For his first point on appeal, Mr. Cothren argues that he is entitled to have one of his convictions set aside because his trial counsel was ineffective in failing to object on double jeopardy grounds to his conviction and sentencing for both the manufacture of methamphetamine and the possession of methamphetamine with intent to deliver. The State argues that Mr. Cothren's double-jeopardy argument is not cognizable in a Rule 37 proceeding based upon the fact that the argument was not raised before the original trial court, and therefore should not be addressed on the merits. We rejected this argument in *Rowbottom v. State*, 341 Ark. 33, 13 S.W.3d 904 (2000), wherein we reaffirmed that a violation of double jeopardy is an error so fundamental that it renders the judgment of conviction void. Accordingly, we held that a double-jeopardy claim can be raised for the first time in a Rule 37 petition. *Id.*, 341 Ark. at 37, 13 S.W.3d at 907. We therefore address the merits of Mr. Cothren's double-jeopardy argument.

■ The Double Jeopardy Clauses of the United States and Arkansas Constitutions protect criminal defendants from: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Wilcox v. State*, 342 Ark. 388, 39

S.W.3d 434 (2000); *North Carolina v. Pearce*, 395 U.S. 711 (1969); *Zawodniak v. State*, 339 Ark. 66, 3 S.W.3d 292 (1999). The third protection is at issue here. Mr. Cothren argues that he has been punished twice for the same offense because possession of a controlled substance with intent to deliver is a lesser included offense of manufacturing the controlled substance.

■ In *Blockburger v. United States*, 284 U.S. 299 (1932), the U.S. Supreme Court held that the double jeopardy bar applies in the multiple punishment context where the two offenses for which the defendant is punished cannot survive the "same-elements" test. The same-elements test, commonly referred to as the " *Blockburger*" test, is as follows:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not . . . . [A] single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

*Blockburger v. U.S.*, 284 U.S. at 304. The *Blockburger* test has been applied by this court, *Craig v. State*, 314 Ark. 585, 863 S.W.2d 825 (1993), and the Arkansas General Assembly has codified this constitutional protection at Ark. Code Ann. § 5-1-110 (Repl. 1997), which provides in relevant part:

> (a) When the same conduct of a defendant may establish the commission of more than one (1) offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one (1) offense if:
>
> (1) One offense is included in the other, as defined in subsection (b) of this section;
>
> * * * * *
>
> (b) . . . . An offense is so included if:
>
> (1) It is established by proof of the same or less than all the elements required to establish the commission of the offense charged;

■ Mr. Cothren was charged and convicted of two counts of violating Ark. Code Ann. § 5-64-401 (Supp. 1999), which proscribes the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance. The charges and convictions were based upon one manufacturing count and one possession-with-intent-to-deliver count, with both counts being for methamphetamine in an amount within the same weight range — between 200 and 400 grams. The Arkansas Criminal Code defines the term "manufacture" as follows:

> "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use . . . .

Ark. Code Ann. § 5-64-101 (Repl. 1997).

■ As Mr. Cothren has argued, possession of a controlled substance is a lesser-included offense of manufacturing that substance. *Craig v. State*, 314 Ark. 585, 589, 863 S.W.2d 825, 827 (1993). Consequently, conviction of both crimes, if arising from the same course of conduct, violates double jeopardy. *Id.* However, Mr. Cothren was not convicted of simple possession. Mr. Cothren was convicted of possession *with intent to deliver.* Based upon the language of the statute excepting the preparation or compounding of a controlled substance for an individual's own use, Mr. Cothren argues that the intent to deliver is a required element of manufacturing a controlled substance as defined by section 5-64-101(m). We disagree. In order to convict Mr. Cothren of the offense of manufacturing a controlled substance, the statute requires the State to prove that he was engaged in the production, preparation, propagation, compounding, conversion, or processing of a controlled substance. Ark. Code Ann. § 5-64-101(m). There is no requirement that the State prove additionally that Mr. Cothren intended to deliver the controlled substance, although Mr. Cothren was given the opportunity under the statute to assert as a defense to prosecution that he was not guilty of manufacturing a controlled substance because the methamphetamine was for his own use. *Id.*

■ Applying the *Blockburger* test to the statutes at issue, therefore, it becomes evident that possession of a controlled substance with intent to deliver is not a lesser-included offense of manufacturing a controlled substance. A conviction for manufacturing requires proof that the defendant produced, prepared, propagated, compounded, converted, or processed a controlled substance. Ark. Code Ann. § 5-64-101(m). Possession with intent to deliver requires no such proof. Ark. Code Ann. § 5-64-401. Furthermore, as stated above, a conviction for manufacturing does not require proof of intent to deliver, an element essential to a conviction for possession with intent to deliver. *Id.* Because the two offenses for which Mr. Cothren was convicted each require the proof of an element not common to the other, possession with intent to deliver is not a lesser-included offense of manufacturing a controlled substance. Ark. Code Ann. § 5-1-110.

■ Mr. Cothren argues, additionally, that he cannot be convicted of both manufacturing and possession of a controlled substance with intent to deliver based upon the evidence presented because both offenses arise out of the same impulse and, therefore, constitute a continuing course of conduct. The trial court held that Mr. Cothren's conduct was not one continuing course, but two separate courses of conduct. The manufacturing conviction arose out of the manufacturing process that took place inside the dental lab.[2] The possession-with-intent-to-deliver conviction arose out of Mr. Cothren's possession of the product as it was completing its process of production in the back of the red Dodge pickup.[3] We cannot say the trial court clearly erred in this finding. The testimony of several witnesses at trial established the fact that Mr. Cothren used the dental lab in Quitman for the production of methamphetamine. Mr. Barber testified that Mr. Cothren was in the process of making a batch of methamphetamine when he called to invite Barber to visit. Mr. Barber joined Mr. Cothren at the dental lab for the purpose of observing the manufacturing process at the lab on September 22, 1996. Paraphernalia commonly used in the manufacture of methamphetamine and detailed instructions for its manufacture were found within Mr. Cothren's dental lab. The

---

[2] The record reflects that Mr. Cothren told the police "that [the two cake pans] was the stuff that they made," which evidence supports the conviction of manufacturing methamphetamine in the amount of at least 200 grams but less than 400 grams.

[3] Because Mr. Cothren possessed over 200 milligrams of methamphetamine in the truck, there existed a rebuttable presumption that he possessed it with intent to deliver. *See* Ark. Code Ann. § 5-64-401(d) (Repl. 1997). The two cake pans contained an aggregate weight, including adulterants and diluents, of 326.9 grams of methamphetamine. Ark. Code Ann. § 5-64-401(a).

paraphernalia included opened batteries, antihistab packages, and used cans of starting fluid, all of which contain ingredients necessary for manufacturing methamphetamine. The compound substances found in some of the containers tested positive for methamphetamine. A man and a woman came to the lab "to buy and ounce." Mr. Cothren asked to borrow Mr. Barber's truck and loaded everything, promising to "split whatever he made" with Mr. Barber. It was after Mr. Cothren left in Mr. Barber's truck that Mr. Barber called 911 to report a possible burglary. When Mr. Cothren returned to the dental lab in Mr. Barber's truck, police observed the two cake pans of methamphetamine in the back of the pickup and arrested Mr. Cothren.

▮▮▮▮ As the court of appeals noted in Mr. Cothren's direct appeal, "a substance does not have to be in a form to be sold before 'manufacturing' occurs." *Cothren v. State*, CACR 97-1230, slip op. at 1. Mr. Cothren had committed the offense of manufacturing a controlled substance inside the dental lab before he left the premises. The fact that the methamphetamine was still "cooking" when he was found to be in possession of it with intent to deliver does not cause the two offenses to be merged into one continuing course of conduct.

> A "continuing offense" is one that is a "continuous act or series of acts set on foot by a single impulse and operated by an unintermittent force." *Britt v. State*, 261 Ark. 488, 549 S.W.2d 84 (1977). The test to determine if a situation involves a continuing offense is "whether the individual acts are prohibited, or the course of action which they constitute; if the former, then each act is punishable separately; if the latter, there can be but one penalty." *Id.*, 261 Ark. at 493, quoting Wharton, Criminal Law, 11th ed. § 34, n. 3. Put another way, "when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *Id.* Examples given in *Britt* and cited in several subsequent cases of continuing offenses include nonsupport [Ark. Code Ann. § 5-26-401], promoting prostitution [Ark.. Code Ann. §§ 5-70-104 - 106], and erecting or maintaining a gate across a public highway [Ark. Code Ann. § 5-71-214].

*McLennan v. State*, 337 Ark. 83, 88-89, 987 S.W.2d 668, 671 (1999). In the instant case, it is the individual acts of manufacture and possession with intent to deliver that are prohibited, not the continuing course of action. For these reasons, Mr. Cothren's conviction

of both offenses does not violate double-jeopardy principles, and the trial court did not clearly err in denying the petition for post-conviction relief.

## II. Closing Arguments

For his second point on appeal, Mr. Cothren argues that his trial counsel was ineffective in failing to object and demand a mistrial in response to improper argument by the prosecuting attorney during closing arguments. Mr. Cothren's argument relates to the following statement regarding the statutory presumption of intent to deliver that was made by the prosecuting attorney during closing arguments: "The law says that the amount of methamphetamine gives rise to the possession with the intent to deliver." Mr. Cothren argues further that the trial court had an affirmative duty to declare a mistrial on its own motion in response to the prosecutor's argument.

In response, the State argues that the prosecuting attorney did not improperly argue the statutory presumption. If the prosecutor's argument was improper, however, the State argues that Mr. Cothren's argument concerning the trial court's duty to act on its own is not preserved for review. Further, the State argues that the failure of Mr. Cothren's trial counsel to object to the argument was a legitimate trial strategy. Finally, the State asserts that, even if error is shown, Mr. Cothren has failed to demonstrate prejudice.

With regard to the trial court's duty on its own motion to act, Mr. Cothren's argument is not cognizable in a Rule 37 proceeding. "To the extent that [Mr. Cothren] argues that the trial court erred when it did not, on its own motion, seek to remedy the alleged prejudice caused by the prosecutor's remarks, we conclude that he cannot raise that argument for the first time in a Rule 37 proceeding. This is an allegation of trial error that should have been raised on direct appeal. As we explained above, such an error can only be raised for the first time under Rule 37 if it is so fundamental as to render the judgment void and subject to collateral attack. In *Pitcock v. State*, 279 Ark. 174, 649 S.W.2d 393 (1983), we held that a trial error involving a remark made by a prosecutor during closing argument was not 'fundamental.' " *Sasser v. State*, 338 Ark. at 390, 993 S.W.2d at 910. Accordingly, we may only consider Mr. Cothren's claim that his counsel was ineffective for failing to object to the prosecutor's comments.

 █ Mr. Cothren's trial counsel testified at the Rule 37 hearing that he did not find the prosecutor's closing arguments at trial objectionable. Even in hindsight, he was not certain that the arguments were improper. Once again, as we stated in *Sasser v. State*:

> Experienced advocates might differ about when, or if, objections are called for since, as a matter of trial strategy, further objections from counsel may have succeeded in making the prosecutor's comments seem more significant to the jury. *Neff v. State*, 287 Ark. 88, 696 S.W.2d 736 (1985). Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct. *Cohen v. United States*, 996 F. Supp. 110 (D. Mass. 1998).

338 Ark. at 391, 993 S.W.2d at 910. We cannot say that the circuit court clearly erred when it found that Mr. Cothren failed to prove a deficient performance by trial counsel. In any event, Mr. Cothren has failed to show that there is a reasonable probability that the outcome of his trial would have been different if trial counsel had made an objection to the prosecutor's comment. *Sasser v. State, supra.* Consequently, Rule 37 relief is not warranted.

Affirmed.