IN RE: THREE PIECES of PROPERTY
LOCATED in MONTICELLO, ARKANSAS

CA 02-223 100 S.W.3d 76

Court of Appeals of Arkansas
Division III
Opinion delivered March 12, 2003

236

*Hough & Hough, P.A.* by: *Stephen G. Hough*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Misty Wilson Borkowski*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. This is an appeal from a decision of the Drew County Circuit Court in which three pieces of property located in Monticello, Arkansas,[1] were forfeited subsequent to the drug convictions of the property owners, Glen and Kathy Rabb, and an equitable lien in one of the properties was granted to Glen Rabb's mother, Betty Rabb. On appeal, the Rabbs assert that the State failed to show by a preponderance of the evidence that the property was subject to forfeiture. On cross-appeal, the State contends that the trial court erred in finding that Betty Rabb held an equitable interest in the 509 South Main Street property. We affirm the trial court's decision regarding the forfeiture of the properties but reverse the grant of the equitable lien to Betty Rabb.

On October 28, 1998, Glen Rabb was arrested in California on a probation violation. During a search of Glen Rabb's apartment, California authorities found evidence of a drug link to his wife, Kathy Rabb, then living in Monticello, Arkansas. The California authorities contacted Arkansas authorities, and eventually

---

[1] The legal descriptions for the three properties are: (a) S 70' N 210' W 200' of Block 219 Monticello Original Plat, City of Monticello, Drew County, Arkansas, also known as 509 South Main Street, Monticello, Arkansas; (b) S 70' N 140' W 200' of Block 210 Monticello Original Plat, City of Monticello, Drew County, Arkansas, also known as 513 South Main Street, Monticello, Arkansas; (c) All of Block 4 of Monticello Original Plat except for 125 feet on the south side, City of Monticello, Drew County, Arkansas, also known as 507 North Church Street, Monticello, Arkansas.

two search warrants were executed on the residence of Kathy Rabb located at 507 Church Street in Monticello, Arkansas. On October 29, 1998, the initial search of the property was conducted, from which authorities seized approximately $4,000 in cash, drugs, and drug paraphernalia. A second search of the property on November 13, 1998, yielded approximately seven ounces of methamphetamine, $7,000 hidden in the bathroom, $141,000 hidden in the kitchen, and $177,000 hidden in a safe concealed in the floor of an upstairs bedroom closet. These items were seized by authorities, along with numerous documents such as phone and tax records, and handwritten records which appeared to be "pay and owe" ledgers involved in drug trafficking.

On November 18, 1998, the State filed an *in personam* complaint in Drew County Circuit Court for the seizure of property located at 507 North Church Street and sought an *ex parte* temporary restraining order pending convictions of Glen and Kathy Rabb for drug trafficking. That same day, the circuit court entered an *ex parte* order enjoining and restraining Glen and Kathy Rabb from "selling, encumbering, mortgaging, contracting to sell, or otherwise disposing of or removing" the 507 North Church Street property or its contents. On November 19, 1998, the State filed a notice of *lis pendens* concerning three parcels of property: 507 North Church Street, and 509 and 513 South Main Street.[2]

On November 23, 1998, the State filed a motion for an *ex parte* temporary restraining order regarding the two properties located at 509 and 513 South Main Street. That same day, the circuit court entered an *ex parte* order enjoining and restraining Glen and Kathy Rabb from "selling, encumbering, mortgaging, contracting to sell, or otherwise disposing of or removing" the two Main Street properties. Both Glen and Kathy Rabb filed answers to the *in personam* complaint denying that the real properties were subject to forfeiture.

Glen and Kathy Rabb were charged with conspiracy to deliver a controlled substance, methamphetamine; and Kathy

---

[2] 507 North Church Street was owned at the time by Glen and Kathy Rabb; the 509 and 513 South Main Street properties were held only in the name of Kathy Rabb.

Rabb was additionally charged with possession with intent to deliver, and simultaneous possession of a firearm and a controlled substance. On June 17, 1999, Kathy Rabb was convicted on all charges. *See Rabb v. State*, 72 Ark. App. 396, 39 S.W.3d 11 (2001) (affirming the convictions with the exception of the simultaneous possession conviction). On August 24, 1999, the circuit court entered an order in which the parties stipulated that all three parcels of property "shall remain subject to the orders granting temporary injunctive relief." On February 17, 2000, Glen Rabb was convicted of conspiracy to deliver a controlled substance (methamphetamine). *See Rabb v. State*, CACR 00-01010, (Ark. App. Sept. 2001) (affirming the conviction).

On April 14, 2000, the State filed an *in rem* complaint for the forfeiture of the three Monticello, Arkanas, properties located at 507 Church Street, 509 Main Street, and 513 Main Street, alleging that both Glen and Kathy Rabb had been convicted of violating the Arkansas Uniform Controlled Substances Act. On May 8, 2000, a warranty deed was filed regarding the 507 North Church Street property, attempting to transfer the property from Glen and Kathy Rabb to Glen's mother, Betty Rabb. On June 2, 2000, a warranty deed was filed regarding the 509 South Main Street property, attempting to transfer it from Kathy Rabb to Betty Rabb.

On January 30, 2001, a warning order was filed notifying potential claimants that the State had filed an *in rem* forfeiture action against the three parcels of property. On February 2, 2001, Betty Rabb, as a potential claimant, was served with notice of the warning order. Additionally, the proof of publication showed that the warning order was published for two consecutive weeks, beginning February 7, 2001. On February 27, 2001, Glen, Kathy, and Betty Rabb filed an answer, claiming an interest in all three properties. Additionally, Betty Rabb claimed an equitable interest in all three properties based upon her payment of real property taxes on the properties, and specifically, an equitable lien as to the 509 South Main Street property based upon her payoff of the Commercial Bank mortgage on May 11, 1999, in the amount of $15,764.36.

A trial on the *in rem* action was held on May 14, 2001, after which the judge took the case under advisement. On September 21, 2001, the judge entered an order finding that all three parcels of land were acquired and used for the purpose of possession, sale, and distribution of controlled substances in violation of Ark. Code Ann. § 5-64-401 (Supp. 1999), and accordingly forfeited all three pieces of property to the State. Additionally, he found that Betty Rabb held an equitable lien in the amount of $15,764.36, based upon her paying off the mortgage on the property located at 509 South Main Street. From that order, comes the appeal regarding the forfeiture of the three pieces of property and the cross-appeal by the State seeking to set aside Betty Rabb's equitable lien in the 509 South Main Street property.

■ ■ A forfeiture is an *in rem* civil proceeding, independent of the criminal charge, and to be decided by a preponderance of the evidence. This court will set aside the trial judge's findings only if they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. *See* Ark. R. Civ. P. 52(a); *In Re: One 1994 Chevrolet Camaro*, 343 Ark. 751, 37 S.W.3d 613 (2001); *Reddin v. State*, 15 Ark. App. 399, 695 S.W.2d 394 (1985). A finding is "clearly erroneous" when, although there is evidence to support it, the appellate court is left, upon viewing the entire evidence, with the definite and firm conviction that a mistake has been made. *Statco Wireless, LLC v. Southwestern Bell Wireless, LLC*, 80 Ark. App. 284, 95 S.W.3d 13 (2003).

I. *Whether the State failed to show by a preponderance of the evidence that the property was subject to forfeiture.*

Arkansas Code Annotated section 5-64-505 is part of the Uniform Controlled Substances Act and sets forth the property that is subject to forfeiture under the act along with the procedures to be followed. The relevant parts of section 5-64-505(a)(6) & (7) (Supp. 1999)[3] state:

---

[3] Although the State refers to the 2001 supplement of Ark. Code Ann. § 5-64-505, we cite to the 1999 supplement, which was in effect at the time of the forfeiture trial on

(a) ITEMS SUBJECT TO FORFEITURE. The following are subject to forfeiture upon the initiation of a civil proceeding filed by the prosecuting attorney and when so ordered by the circuit court in accordance with this section . . . :

(6) Everything of value furnished or intended to be furnished in exchange for a controlled substance or counterfeit substance in violation of this chapter, *all proceeds and profits traceable to such an exchange* . . . .

(7) Real property may be forfeited under this chapter if it substantially assisted in, facilitated in any manner, or was used or intended for use in the commission of any act prohibited by this chapter . . . .

(Emphasis added.) The Rabbs argue that the State failed to show by a preponderance of the evidence that any of the three properties either substantially assisted in, facilitated in any manner, or was used or intended for use in the commission of any act prohibited by the Uniform Controlled Substances Act, and that there was no "active" participation between the real property and the criminal defendants in the facilitation of any offense committed.

The Rabbs argue with respect to the property located at 513 South Main Street that it has never even been the subject of the execution of a search warrant or sting operation, and that the only evidence related to it was the introduction of the deed, its location, and the year it was purchased. They assert that there was little more evidence offered related to the property located at 509 South Main Street. Reference is made to a handwritten document relating to some insurance and tax payments made either from an unidentified savings account or by Kathy Rabb. Their basic argument is that the State failed to provide any evidence that either piece of property was related to the Rabbs' drug activities.

While admitting that the property located at 507 Church Street presents more of a problem, as it was the property that was subject to the two searches that yielded drugs, large amounts of hidden cash, and records relating to the criminal activities in ques-

May 14, 2001. The 2001 amendment became effective as of August 13, 2001; however, the text of the relevant subsections is identical in both the 1999 and 2001 supplements.

tion, the Rabbs still maintain that the State failed to meet its burden by a preponderance of the evidence that the property was subject to forfeiture. They claim that although there were drugs and money in the residence, that is insufficient proof because the State failed to provide any evidence that drugs were sold out of the house.

■ The State points to the drugs and large amount of hidden cash seized from the 507 North Church Street property during the two searches, and claims that the evidence showed that the property was used in the commission of the drug-trafficking activities and as a storage location both for illegal narcotics and for the proceeds of illegal drug activity. We agree that there is clearly a strong nexus between the 507 North Church Street property and the Rabbs' illegal drug activity, thus making it subject to forfeiture under Ark. Code Ann. § 5-64-505(a)(7).

■ ■ The State argues, pursuant to Ark. Code Ann. § 5-64-505(a)(6), that the two properties located on South Main Street were purchased with proceeds and profits traceable to drug-trafficking activities in violation of the Uniform Controlled Substances Act. We agree that this is appropriate because there is not a strong enough nexus between those properties and the Rabbs' illegal drug activity to satisfy the requirement of Ark. Code Ann. § 5-64-505(a)(7) that the property "substantially assisted in, facilitated in any manner, or was used or intended for use in the commission of any act prohibited by the Uniform Controlled Substances Act."

Arkansas Code Annotated section 5-64-505(g)(5)(B) (Supp. 1999), sets forth the burden of proof in a forfeiture proceeding:

> If a timely answer has been filed, the prosecuting attorney shall have the burden of proving *by a preponderance of the evidence* that the seized property should be forfeited. After the prosecuting attorney has presented such proof, any owner or interest holder of the property seized shall be allowed to present evidence why such property should not be forfeited. If the court determines that grounds for forfeiting the property exist and that no defense to forfeiture has been established by the owner or interest holder, the court shall enter an order pursuant to subsection (h) of this section. However, if the court determines either that the prose-

cuting attorney has failed to establish that such grounds exist or that the owner or interest holder has established a defense to forfeiture, the court shall order that the property be immediately returned to the owner or interest holder.

(Emphasis added.) The State was required to prove by a preponderance of the evidence that the South Main Street properties were purchased with proceeds traceable to the drug-trafficking activities. The federal forfeiture statute, found at 21 U.S.C. § 881, is substantially similar to the Arkansas statute; however, under the federal statute the burden of proof shifts to the defendant once the government has established probable cause. While Arkansas case law has not addressed the evidence necessary to sustain the forfeiture of real property under Ark. Code Ann. § 5-64-505, federal cases provide some guidance. Probable cause under the federal statute has been upheld where the drug activity of the owner has been established and there is evidence that the owner had no legitimate source of income at the time the property in question was purchased. *See United States v. Carrell,* 252 F.3d 1193 (11th Cir. 2001); *United States v. Two Parcels of Real Property Located in Russell County, Alabama,* 92 F.3d 1123 (11th Cir. 1996); *United States v. Thomas,* 913 F.2d 1111 (4th Cir. 1990); and *U.S. v. Certain Property Situated at Route 3, Box 247E, Mountain Home, AR,* 568 F.Supp. 434 (W.D. Ark. 1983). Although the federal cases rely on shifting the burden of proof to the defendant once probable cause has been established, they are instructive with regard to types of proof accepted by courts.

The Arkansas forfeiture statute does not shift the burden of proof to the Rabbs to show that the property was purchased with legitimate sources, but it does require a defense to be articulated once the State has met its burden. The State provided evidence at the forfeiture trial that in 1996 and 1997, at the time the South Main Street properties were purchased, Kathy Rabb had no legitimate source of income. There was testimony from Lieutenant DeMent, and additional evidence discovered from a review of the documents and records seized from 507 North Church Street, that the drug-trafficking conspiracy began in late 1993 or early 1994. The State introduced Social Security records found at the 507

North Church Street property that listed no reported income for Kathy for 1994, 1995, or 1996; and that neither 1997 nor 1998 income had been reported. Lieutenant DeMent testified that authorities checked all her personal records, bank records, bank account statements, etc. and never found check stubs from a place of employment, tax returns, or any other indication that she had a legitimate source of income for the period during which the South Main Street properties were purchased. Although she was unemployed and reported no income to the federal government for the years in question, evidence was introduced that she wrote checks in the amount of $16,000 and $9,000 on her Commercial Bank account for part of the purchase price for the South Main Street properties.

There was also evidence relating to a document retrieved from the North Church Street property, which read "Check T savings to see if taken from it. If not then Kathy paid with her money, $270.00 2/96 (509 South Main)(insurance)," and "$272.00 2/97 (509 South Main)(insurance)," and "10/97 (real taxes.)" Lieutenant DeMent testified that the document referenced various payments made on the 509 South Main Street property for insurance and taxes. He explained that authorities never discovered a legitimate savings account in any bank that corresponded to all the references in the narcotics documentation to the "T savings account" and that they presumed it to be funds received from the drug pay and owe sheet. When specifically asked if his office was making the allegation that the properties on [South] Main Street were purchased from the illegal drug funds, Lieutenant DeMent stated unequivocally, "Yes, I am." He referenced the $16,000 and $9,000 checks written from Kathy Rabb's account during the period she was unemployed and stated that he did believe it was drug money.

■ Subsequent to the testimony of Lieutenant DeMent and the introduction of the evidence related to her sources of income, Kathy Rabb presented absolutely no evidence rebutting the evidence that the properties were purchased with proceeds of the drug-trafficking activities. While the burden of proof is on the

State, the lack of evidence showing that the property should not be subject to forfeiture was specifically something to be weighed by the trial court pursuant to Ark. Code Ann. § 5-64-505(g)(5)(B).

■ ■ The State contends that this evidence was sufficient to meet its burden of proof. While the evidence is more persuasive on the North Church Street property, we hold that the State provided the bare minimum needed to meet its burden, giving due regard to the opportunity of the trial court to judge the credibility of the evidence and witnesses. *See Reddin, supra.* The preponderance of the evidence shows that the three properties in question were subject to forfeiture, and we cannot say that the trial court's decision is clearly erroneous as we are not left with the definite and firm conviction that a mistake has been made. Accordingly, we affirm the decision forfeiting the property.

*II. Whether the trial court erred in finding that Betty Rabb held an equitable interest in the 509 South Main Street property.*

This is a cross-appeal filed by the State, to which no reply was filed. As set forth above, on November 18, 1998, the circuit court granted the State's motion for a temporary restraining order enjoining and restraining the Rabbs from "selling, encumbering, mortgaging, contracting to sell, or otherwise disposing of or removing" the 507 North Church Street property or its contents. On November 19, 1998, the State filed a notice of *lis pendens* concerning all three parcels of property. On November 23, 1998, the circuit court granted the State's motion for a temporary restraining order enjoining and restraining the Rabbs from "selling, encumbering, mortgaging, contracting to sell, or otherwise disposing of or removing" the two South Main Street properties.

On May 11, 1999, $15,764.36 was withdrawn from Commercial Bank savings account No. 310-904 which presumably belonged to Betty Rabb. She is the person who signed the withdrawal slip, and no one disputed that it was her account. On the same day, a cashier's check in the same amount was drawn on Commercial Bank and made payable to Portland Bank, listing as

the remitter Kathy and Glen Rabb, for the payoff of loan No. 8060029. At the forfeiture trial, Betty Rabb testified that she obtained a loan, which she deposited in her savings account, and then used the proceeds to pay off the mortgage on the *507 North Church Street property*. Contrarily, Betty Rabb's pleadings asserted and, the circuit court granted her, an equitable interest for that amount in the *509 South Main Street property*. Almost three and a half months subsequent to that transaction, on August 24, 1999, the trial court entered an order in which Glen and Kathy Rabb stipulated that both the 507 North Church Street and 509 South Main Street properties would remain subject to the temporary restraining orders previously issued.

█ The State argues that regardless of which loan she paid off, Betty Rabb did not obtain an equitable interest in any of the properties in question. The State asserts that there was neither an express nor implied agreement to create a lien on the property, real or personal, as security for an obligation, and that the loan itself does not give rise to a lien unless there was fraud in its pro- curement. *See Mitchell v. Mitchell*, 28 Ark. App. 295, 773 S.W.2d 853 (1989). There is no evidence that Betty Rabb purchased the loan from Commercial Bank or that the bank gave her an assign- ment entitling her to stand in place of the bank as a secured credi- tor. At most, there is testimony from Betty Rabb that she spoke to lawyers for both Kathy Rabb and the bank regarding her posi- tion if she paid off the mortgage, and that they told her she would stand in the bank's position. Betty Rabb contended that they were supposed to "fix up" papers conveying an interest to her but that it never happened. She admits that she neither sought inde- pendent representation to make sure her interests were protected nor checked to see if the property was in any way encumbered prior to paying off the mortgage.

The only documentation regarding her alleged interest in the property provided by Betty Rabb consisted of the savings account withdrawal slip for $15,764.36, the cashier's check by which she paid off loan No. 8060029, a warranty deed for the 509 South Main Street property dated June 2, 2000, and a warranty deed for

the 507 North Church Street property dated May 8, 2000. She has no claim that she was a bona fide purchaser of the property without notice, actual or constructive, or that the property was encumbered by a *lis pendens* filing and a temporary restraining order prohibiting the transfer of the property. *See Orr v. Orr*, 211 Ark. 1062, 204 S.W.2d 545 (1947). The State maintains that Betty Rabb gratuitously paid off the loan without properly retaining any rights to or interest in the property, in effect making the loan a gift to Glen and Kathy Rabb.

 We have held that "the mere loan of money for the purchase of property does not result in an equitable lien in favor of the lender." *Warren v. Warren*, 11 Ark. App. 58, 61, 665 S.W.2d 909, 910-11 (1984). Betty Rabb did not assert that her payoff of the loan was premised upon any agreement that she would be secured by an equitable lien, or that either Glen or Kathy Rabb would repay her. She failed to present evidence that there was any express or implied agreement to create a lien on the property. Further, she did not argue that the payoff was somehow obtained by trickery or fraud. Because the evidence does not show any agreement to give the lender, Betty Rabb, a lien, or that the loan was acquired through trickery or fraud, it was error for . the trial judge to impress an equitable lien upon the property based upon her payoff of a loan six months after the *lis pendens* was filed and the trial court had entered an order enjoining and restraining the Rabbs from doing anything that might affect the properties. Accordingly, we reverse and remand on that point with directions to cancel the equitable lien awarded to Betty Rabb.

Appeal affirmed.

Cross-appeal reversed and remanded.

STROUD, C.J., and NEAL, J., agree.