$735 IN U.S. CURRENCY; Nancy Stuart *v.*
STATE of Arkansas

CA 04-812

Court of Appeals of Arkansas
Opinion delivered March 23, 2005

[Rehearing denied May 4, 2005.*]

---

* PITTMAN, C.J., would grant rehearing.

*Robert S. Blatt*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Nancy Stuart appeals from an order granting the State's petition for forfeiture of $735. For reversal Stuart argues that the trial court erred when it denied her motion for directed verdict and ordered the forfeiture of the $735 because the money was not forfeitable under Ark. Code Ann. § 5-64-505 (Supp. 2003). Specifically, Stuart argues that the money was not forfeitable because it was not found in close proximity to drugs or drug paraphernalia. We agree and reverse the trial court's order granting the State's forfeiture petition.

On September 4, 2003, Officer Allen Marks of the Sebastian County Sheriff's Department and DEA task force observed Stuart and her husband, Larry, at the Economy Feed Store purchasing a one-gallon container of iodine. After their purchase, Office Marks asked the feed store clerk whether she observed "anything different" about the Stuarts. The clerk responded that they had a strong chemical odor about them.

Officer Marks then followed the Stuarts down the highway and initiated a traffic stop. Stuart was the driver. After she provided her driver's license and proof of insurance, Marks wrote her a warning citation for a broken windshield. During that time, Marks began asking Stuart questions. Stuart responded that she and her

husband were returning from Home World and the lumberyard after purchasing wood and paneling for crafts. She failed to mention her recent stop at the feed store and became nervous. Marks asked whether there were drugs present in the vehicle, to which Stuart responded, "Not that I know of." He also asked whether there were any guns or dead bodies, and Stuart said that there were none. Marks then requested consent to search Stuart's vehicle, and she gave her consent. As Marks approached her vehicle, Stuart stated, "There's some iodine in the truck." After approaching the car, Marks explained to Larry and the other passenger that Stuart had given him permission to search the car. Another officer arrived at that time, and Marks requested that he stand next to the passengers of the vehicle. When Larry exited the vehicle, he dropped what Marks thought was a marijuana cigarette.[1] Marks handcuffed him.

Inside the vehicle, Marks discovered the one-gallon container of iodine behind the seat, an open bottle of whiskey and a cup of whiskey that the passenger was drinking, and three cases of beer, which the passenger offered belonged to him. When questioned about the iodine, Stuart stated that she used it for her dogs and horses. During Marks's testimony, he stated that he had experience with methamphetamine identification; that he had attended drug identification school; that he had learned that iodine is one of the ingredients used in the manufacture of methamphetamine; and that he had learned that iodine had to be diluted for use on animals. Thus, he stated that, when Stuart said that she poured the iodine directly onto the animals, he told her that she had lied about using the iodine on her animals and asked whether she knew what methamphetamine was. Stuart replied, "Yes, crank." A search warrant was obtained for the Stuart residence, and Stuart eventually admitted that she had purchased the iodine for "cooking crank." Stuart also admitted that she had tubing in her house.

During a search of Stuart's person, Marks found $735 and a receipt for the gallon of iodine. Marks could not testify for sure whether the iodine was purchased with cash, but stated that he believed it was. To be sure, though, Marks said he would have to look at the receipt. Marks also stated that Stuart told him that the money she was carrying came from a retirement or pension plan. A copy of the Tyson Foods, Inc. Retirement Plan 401(k) Distribu-

---

[1] The substance was never tested, and it was not established at the forfeiture hearing that the item dropped was a marijuana cigarette.

tion Election Form appears in the addendum. The form indicates that Larry requested that $2,158.37 of his retirement funds be distributed to him in one lump sum on July 28, 2003. A copy of a check dated August 14, 2003 and written to the order of Larry Stuart from Tyson Foods, Inc. for the amount of $3,009.64 also appears in the addendum.

Following Marks's testimony, Stuart's counsel moved for a directed verdict, arguing that the State had failed to prove that the money was connected to any drugs that were in the vehicle. He asserted that, although the officer had found what he thought was a marijuana cigarette, the State had not presented evidence that the suspected substance was tested or that there was a usable amount. Because marijuana was the only alleged drug in the vehicle and iodine is not a drug, counsel argued, Stuart was entitled to a directed verdict. The State responded that there is a rebuttable presumption that money found in close proximity to forfeitable drug paraphernalia is also forfeitable, and the motion for directed verdict was denied. Following the presentation of all of the evidence, the trial court granted the State's petition to forfeit the $735, and it is from that order that Stuart appeals.

Forfeiture is an *in rem* civil proceeding, independent of any pending criminal charge, to be decided by the preponderance of the evidence. *In re Three Pieces of Property Located in Monticello, Arkansas*, 81 Ark. App. 235, 100 S.W.3d 76 (2003). Because the forfeiture statute is penal in nature and forfeitures are not favorites of the law, we construe the statute narrowly. *Davidson v. State*, 38 Ark. App. 137, 831 S.W.2d 160 (1992). This court will set aside a trial court's findings only if they are clearly erroneous, and due regard is given to the trial court's opportunity to judge the credibility of the witnesses. *In re Three Pieces of Property, supra*. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left, upon viewing the entire evidence, with the definite and firm conviction that a mistake has been made. *Id.*

Arkansas Code Annotated section 5-64-505 provides in pertinent part:

> (a) The following are subject to forfeiture upon the initiation of a civil proceeding filed by the prosecuting attorney . . .

. . .

(6) Everything of value furnished or intended to be furnished in exchange for a controlled substance or counterfeit substance in violation of this chapter, all proceeds and profits traceable to such an exchange, and all moneys, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of this chapter; except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner by reason of any act or omission established by him, by a preponderance of the evidence, to have been committed or omitted without his knowledge or consent.

Rebuttable presumptions. All moneys, coin, and currency found in close proximity to forfeitable controlled substances, to counterfeit substances, to forfeitable drug manufacturing or distributing paraphernalia, or to forfeitable records of the importation, manufacture, or distribution of controlled substances or counterfeit substances are presumed to be forfeitable under this paragraph. The burden of proof is upon claimants of the property to rebut these presumptions by a preponderance of the evidence.

■   The State argues that this court cannot reach the merits of this case because Stuart has failed to bring forth the "entire evidence." We disagree. Our review on appeal is limited to the record as abstracted, and we will not reach the merits of an issue when the documents or proceedings that are necessary for an understanding of the issues are not abstracted. *Blunt v. Cartwright*, 342 Ark. 662, 30 S.W.3d 737 (2000). Rule 4-2 of the Rules of the Arkansas Supreme Court and Court of Appeals provides that the abstract should contain material parts of the pleadings, proceedings, facts, documents, and other matters in the record as are necessary to an understanding of all questions presented to this court for decision. *Id.* It is the appellant's burden to bring forth a sufficient record to demonstrate that the trial court erred. *Id.*; *Reynold d/b/a Renny's Bail Bonds v. Rogers*, 297 Ark. 506, 763 S.W.2d 660 (1989).

While Stuart's notice of appeal designates a partial record, Stuart's abstract and addendum contain the material parts of the forfeiture proceeding and all relevant pleadings necessary to an understanding of the issue raised in this case. On appeal, Stuart argues that the trial court erred in denying her motion for directed verdict, which she presented at the conclusion of the State's case-in-chief, because the State failed to demonstrate that the

money was "in close proximity" to forfeitable drugs or drug paraphernalia. Thus, Stuart argues that the money should not have been forfeited because the State failed to make its case. Accordingly, Stuart has designated the testimony presented during the State's case-in-chief and her motion for directed verdict as the record on appeal. Because Stuart is only challenging the trial court's finding that the State presented sufficient evidence to defeat her motion for directed verdict, we find that she has presented the "entire evidence" with respect to that issue and that the abbreviated record is sufficient for our understanding of the issues on appeal.

■■ There is a rebuttable presumption that money found in close proximity to drug paraphernalia is forfeitable. Ark. Code Ann. § 5-64-505. Drug paraphernalia is defined as:

> [A]ll equipment, products, and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of subchapters 1-6 of this chapter (meaning the Controlled Substances Act of this state).

Ark. Code Ann. § 5-64-101(v) (Repl. 1997). It includes but is not limited to such things as kits, diluents and adulterants, and other devices. *Id.* In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

> (1) Statements by an owner or by anyone in control of the object concerning its use;
>
> (2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance;
>
> (3) The proximity of the object, in time and space, to a direct violation of subchapters 1-6 of this chapter;
>
> (4) The proximity of the object to controlled substances;
>
> (5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of subchapters 1-6 of this chapter; the innocence of an owner, or of anyone in control of the object, as to a direct violation of subchapters 1-6 of this chapter shall not prevent a finding that the object is intended for use, or designed for use, as drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the objects to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community; and

(14) Expert testimony concerning its use[.]

Ark. Code Ann. § 5-64-101(v).

Stuart argues that iodine is not drug paraphernalia, but rather is merely an ingredient in methamphetamine. The State cites *Cothren v. State*, 344 Ark. 697, 42 S.W.3d 543 (1999), for support of its argument that iodine as an ingredient in methamphetamine is drug paraphernalia. In *Cothren*, the appellant was convicted of manufacturing methamphetamine and possession of methamphetamine with intent to deliver. Cothren appealed his convictions, which were affirmed on direct appeal. *Id.* He then petitioned for postconviction relief pursuant to Arkansas Rule of Criminal Procedure Rule 37.1. *Id.* The trial court denied the

petition, and Cothren appealed to our supreme court. *Id.* Before the supreme court, Cothren argued that his conviction and sentence were in violation of double-jeopardy principles and that he was denied due process and effective assistance of counsel. *Id.*

As a part of his double-jeopardy argument, Cothren also argued that he could not be convicted of both manufacturing and possession of a controlled substance with intent to deliver based upon the evidence presented because both offenses arise out of the same impulse and, therefore, constitute a continuing course of conduct. *Id.* The trial court held that Cothren's conduct was not a continuing course of conduct. *Id.* In discussing whether the trial court's ruling was clearly erroneous, our supreme court stated,

> We cannot say the trial court clearly erred in this finding. The testimony of several witnesses at trial established the fact that Mr. Cothren used the dental lab in Quitman for the production of methamphetamine. Mr. Barber testified that Mr. Cothren was in the process of making a batch of methamphetamine when he called to invite Barber to visit. Mr. Barber joined Mr. Cothren at the dental lab for the purpose of observing the manufacturing process at the lab on September 22, 1996. *Paraphernalia commonly used in the manufacture of methamphetamine and detailed instructions for its manufacture were found within Mr. Cothren's dental lab. The paraphernalia included opened batteries, antihistab packages, and used cans of starting fluid, all of which contain ingredients necessary for manufacturing methamphetamine.*

*Cothren*, 344 Ark. at 707-08, 42 S.W.3d at 550. (Emphasis added.)

We find that the State's reliance on this passage from the *Cothren* opinion does not settle the issue of whether ingredients used to manufacture methamphetamine are drug paraphernalia. First, whether or not drug ingredients constitute drug paraphernalia was not an issue in the *Cothren* appeal. Second, it appears that the relied-upon statement is merely *obiter dictum.* Where discussion or comment in an opinion is not necessary to the decision reached therein, the discussion or comment is *obiter dictum. Ward v. Williams,* 354 Ark. 168, 118 S.W.3d 513 (2003).

Additionally, our court has addressed this issue and held that ingredients are not drug paraphernalia. *Autrey v. State,* 90 Ark. App. 131, 204 S.W.3d 84 (2005). In *Autrey,* the appellant argued that the trial court erred in refusing to instruct the jury that

possession of pseudoephedrine with intent to manufacture meth-amphetamine is a lesser-included offense of possession of drug paraphernalia with intent to manufacture methamphetamine. *Id.* This court stated that the difference between the two offenses is that one requires possession of "drug paraphernalia" and the other requires possession of pseudoephedrine. *Id.* at 144, 204 S.W.3d at 91. We held that pseudoephedrine and "drug paraphernalia" are not the same. *Id.*

In that opinion, we observed that Ark. Code Ann. § 5-64-101(v) defines "drug paraphernalia" as "all equipment, products and material of any kind which are used, intended for use, or designed for use in manufacturing producing, processing, preparing a controlled substance." *Id.* at 144, 204 S.W.3d at 91. We also noted,

> The statute lists examples of items that meet the definition. Some of those items are kits for use in growing plants from which controlled substances can be derived; testing equipment used in analyzing the purity of controlled substances; scales and balances for weighing controlled substances; blenders, bowls, containers, and mixing devices used to compound controlled substances; capsules, balloons, envelopes and other containers used to package controlled substances; syringes, needles, and other objects used to inject controlled substances into the body; water pipes; roach clips; and bongs. Ark. Code Ann. § 5-64-101(v)(1) through (12).

*Id.* at 144, 204 S.W.3d at 91. Pseudoephedrine, we concluded, is not "used" to manufacture methamphetamine, but is an "ingredient." *Id.* at 144, 204 S.W.3d at 91. Furthermore, Ark. Code Ann. § 5-64-101(v) does not include drug ingredients in its list of examples of "drug paraphernalia." *Id.*

■■ Our appellate courts have long adhered to the Latin maxim, *expressio unius est exclusio alterius,* as a fundamental principle of statutory construction. *Gazaway v. Greene County Equalization Bd.,* 314 Ark. 569, 864 S.W.2d 233 (1993). Likewise, we have held that the express designation of one thing by the legislature may properly be construed as exclusion of another. *Id.; Cook v. Arkansas-Missouri Power Co.,* 209 Ark. 750, 192 S.W.2d 210 (1946). While Ark. Code Ann. § 5-64-101(v) indicates that the list is not exhaustive, we hold that drug ingredients are not paraphernalia because it cannot be said that drug ingredients are used or are

intended for use to manufacture controlled substances; rather, they are cooked together with other ingredients. *See Autrey, supra.* Therefore, we hold that iodine, an ingredient of methamphetamine, is not drug paraphernalia.

■■ In reaching our holding, we find it persuasive that our legislature has passed several statutes dealing specifically with possession of ephedrine and pseudoephedrine, ingredients of methamphetamine. Ark. Code Ann. § 5-64-1101 (Supp. 2003); Ark. Code Ann. § 5-64-1102 (Supp. 2003). These statutes also address possession of phenylpropanloamine, phenylpropanloamine salts, optical isomers, and salts of optical isomers alone or in a mixture. Possession of more than the statutorily prescribed amount of any one of these ingredients constitutes *prime facie* evidence of intent to manufacture methamphetamine. Ark. Code Ann. § 5-64-1101(b) (Supp. 2003). Unlike section 5-64-101(v)'s definition of drug paraphernalia, the statutes governing possession of ephedrine and pseudoephedrine do not require that those ingredients be "used" in the manufacture of methamphetamine. Ark. Code Ann. § 5-64-1101(a); Ark. Code Ann. § 5-64-1102(a); *see also Autrey, supra.* Abiding by our principles of statutory construction, this court takes "pain to reconcile statutory provisions to make them consistent, harmonious, and sensible." *See Nolan v. Darryl Little,* 359 Ark. 161, 196 S.W.3d 1 (2004). Consequently, because our legislature has passed statutes dealing specifically with drug ingredients, Ark. Code Ann. § 5-64-101(v) must yield to Ark. Code Ann. § § 5-64-1101–1102 because they are specific statutes dealing with the particular subject matter-drug ingredients. *See, e.g., Shelton v. Fisher,* 340 Ark. 89, 8 S.W.3d 557 (2000) (general statutes must yield to specific statutes dealing with a particular matter). Thus, we conclude that our legislature's disparate treatment of drug paraphernalia and drug ingredients is made clear by the distinctions presented in the above statutes; that iodine, as merely a chemical ingredient, is not paraphernalia; and that the trial court erred in failing to grant Stuart's motion for directed verdict. We reverse.

■ At the conclusion of her brief, but not under a specific point heading, Stuart states that because forfeiture proceedings sound in contract, upon reversal of this case she is entitled to attorney's fees. The State cannot be liable for attorney's fees under the Doctrine of Sovereign Immunity, unless immunity is

waived. *See Lake View Sch. Dist. No. 25 v. Huckabee*, 359 Ark. 49, 194 S.W.3d 193 (2004). Stuart has not set forth facts demonstrating how the State has waived its immunity in this case. Accordingly, we deny her request for attorney's fees. *Lake View, supra.*

Reversed and dismissed.

BIRD and GLOVER, JJ., agree.